SILVER CORD COMBINATION MINING CO. v. McDONALD.

1. NEGLIGENCE OF MINING COMPANY — RIGHT OF EMPLOYEE TO RE-
   COVER DAMAGES FOR INJURIES OCCASIONED BY REASON THEREOF.—
   Where a mine is operated by a company through an incline ex-
   tending from the surface several hundred feet into the earth, by
   means of cars run upon iron rails laid therein, and it is an estab-
   lished rule of the company that a signal called a "tally" shall be
   sounded at twenty-three minutes before 5 o'clock every evening,
   at which time the cars shall cease running up and down the incline
   and the workman shall have the right of way for the space of seven
   minutes to reach the surface, it is negligence on the part of the
   company to permit a car to go down the incline after the "tally" is
   sounded, and a miner injured thereby is entitled to recover dam-
   ages.
2. ESTOPPEL BY CONDUCT.— Defendant, through its negligence, having
   put plaintiff in a position of danger, could not complain that he
   did not exercise cool presence of mind in his endeavor to escape
   therefrom.

*Appeal from District Court of Lake County.*

Mr. CLINTON REED, for appellant.

Messrs. TAYLOR & ASHTON, for appellee.

RICHMOND, C. Appellee, plaintiff below, brought this
action to recover damages for injuries alleged to have

been sustained by him while in the employ of the defendant company. The cause was tried to a jury, and verdict rendered in favor of plaintiff for the sum of $2,250. Motion for a new trial overruled. Appeal prayed and allowed. The assignment of errors are to instructions given and refused, and in rendering judgment for plaintiff upon the verdict, and that damages are excessive.

The facts, in substance, are that appellant was a corporation engaged in mining at Leadville, employing upwards of one hundred men, who worked the mine through an incline about eight hundred and thirty-five feet in length. Iron rails were laid along the incline, over which the company drew its cars. Along this incline, on one side, was a passage-way over which was constructed a plank walk. About seven hundred feet down the incline was a station called " No. 2." It was a rule of the company that after " tally," which was expected to occur at twenty-three minutes past 5 o'clock, the cars should cease to run up and down the incline. Miners were allowed seven minutes to reach the surface after tally. An air-pipe extended from the surface to station No. 2, and the man at the top, or foreman, at twenty-three minutes past 5 o'clock, rapped on this air-pipe, or was supposed to do so. This was called "tally." The foreman, who had charge of the mine, and who, as the evidence shows, had authority to hire and discharge men, instructed the man at station No. 2, Thomas McNicholas, that when this signal was not given from the top he was to tally the men, anyhow, at twenty-three minutes past 5 o'clock.

On the day the injuries were received, plaintiff, in passing up the incline, was met by a car going down, and in the excitement attempted to jump across the track at a place, as he thought, of greater safety, and in so doing received the injuries for which he seeks to recover damages in this action.

It is contended by appellant that the rule of the company was that none of the employees engaged in the

mine should attempt the ascent until tally had been given by rapping on the pipe; that this rule was absolute; and that on the day the injuries were received the signal had not been given; therefore the plaintiff, in attempting the ascent of the incline, was violating the rule of the company — consequently, was guilty of contributory negligence. On the other hand, the plaintiff contends that the rule was not absolute, in fact was frequently violated by the defendant, and that the injuries were the result of its negligence in sending a car down the incline during the seven minutes allowed to the miners to reach the surface, and that on the day the injuries were received the man (Thomas McNicholas) stationed at station No. 2 gave the tally to the men before they attempted to ascend the incline.

The defense relied upon by appellant is that there was contributory negligence on the part of plaintiff in violating the rule of the company. It is insisted in the argument of counsel for appellant that no testimony appears showing that a tally had been given before plaintiff, with others, attempted to ascend the incline.

This position assumed in the argument is not supported by the record furnished by appellant. Some dispute arose between counsel for the respective parties as to the testimony of Thomas McNicholas, a witness sworn on behalf of defendant; and, in order that this court might be fully informed of what McNicholas did swear to, appellant furnished a complete abstract of his testimony. From that it appears that McNicholas testified as follows:

"*Question.* Now, what do you know? Explain to the jury about quitting time of the men, and about the rules of the company,— when they should quit, and what signal was given them to quit. *Answer.* The men had orders that they should have seven minutes — that is, from twenty-three minutes after 5 — to go from No. 2 station, where I was stationed, to the top, before the

whistle blew. They had a signal on top,— that the engineer on top would rap at twenty-three minutes after 5, and if he did not the top man there would rap on the air-pipe. I think it was seven minutes for tally. If that was not rapped,— the foreman of the mine told me that, when that was not rapped in time, as long as I had my watch, and knowed the time, to tally the men, and let them go to the top. *Q.* How was it on this day that the accident happened? *A.* This day, I do not think the pipe was rapped at the regular time. If there were any men there at that time, I tallied them. I do not think there was many there. *Q.* And then, when you were waiting there for the drop to come down, to send another to the surface, had the tally commenced to run,— that is, the seven minutes? Was it tally at that time? *A.* It was. *Cross-examination.* *Q.* You say you gave the tally to some of the men there that night? *A.* I gave the tally to all of them that was there. *Q.* You gave to all that were there? *A.* Yes, sir; I do not remember whether the plaintiff was there or not. *Q.* Now, did you notify any of them that there was a train going down the incline at the time they started up, or at the time they were starting up? *A.* I believe not. *Q.* Did you ever tally the men before the time for tally came? *A.* No, sir. *Q.* And then the men that you tallied this evening were started at the proper time, were they? *A.* Yes, sir."

This witness gave further testimony to the same import; but it is unnecessary for us to quote more, as sufficient appears from the above to show that plaintiff was in the incline, on his way to the surface, under the rule of the company, as understood by this witness.

Several witnesses testify in behalf of plaintiff, and support the testimony of McNicholas as to the time, etc. Plaintiff testified that " the regulations of the company was that we were allowed seven minutes to come out; that they were supposed to be on top at 5:30. They

would sometimes tap on the pipe when it was time for us to come up. They did not do it always. The time I was hurt, I was about two hundred or two hundred and fifty feet from the mouth of the incline. It was twenty-three minutes past 5 when we started up the incline."

It may be true, as claimed by the attorney for appellant, that the rule was that tally should not be given until the signal was rapped by some person on the surface of the mine. Yet it is equally true that the company did not at all times observe the rule. At least, it can consistently be claimed that ample evidence appears in the record to warrant the belief that this rule was not strictly adhered to. Undoubtedly the company sought to adopt proper rules and regulations concerning the time when the miners should have a right of way through the incline. Having adopted them, it should have conformed to them; and, failing to do so, it must be held responsible for the consequences resulting from a departure, unless contributory negligence on the part of plaintiff is established. *Railroad Co. v. George,* 19 Ill. 510.

Besides, under the circumstances as detailed by all of the witnesses in the case, we think such a rule as is here contended was in force by appellant should have been strictly enforced. No departure from it should have been tolerated. It was necessary to the welfare of the miners. McNicholas, at station No. 2, could not possibly know when the cars would be sent down the incline by the engineer at the top; and allowing him to give the tally, in violation of the rule, without such knowledge, was subjecting the miners to an extraordinary risk, and was an act of negligence on the part of the company.

In general, questions of negligence and contributory negligence are questions of fact, to be determined by the jury from the evidence and circumstances of the case, under suitable instructions. They cannot ordinarily be decided by the court. Hence, it was the province of the jury to pass upon those questions in this case. *Railway*

*Co. v. Ward*, 4 Colo. 30; 2 Thomp. Trial, § 1681; *Railway Co. v. Harper*, 26 Ill. App. 621.

Counsel for appellant urges that plaintiff, in attempting to cross the track at the time the car was descending the incline, was guilty of contributory negligence, and therefore cannot recover. This question was fairly submitted to the jury by an instruction, and resolved by them favorably to plaintiff. Similar positions and circumstances have several times been presented for judicial investigation as involving the question of contributory negligence, and, it must be admitted, have been variously construed. But the rule which commends itself to our approbation, as resting on sound principles of humanity, is to the effect that "a party giving another a reasonable cause for alarm cannot complain that the person so alarmed has not exercised cool presence of mind, and thereby find protection from responsibility for damages resulting from the alarm, when he is guilty of negligence or violation of law contributing to the injury." *Coal Co. v. Healer*, 84 Ill. 126; *Collins v. Davidson*, 19 Fed. Rep. 83.

It is urged that the court erred in refusing to give the eleventh and twelfth instructions asked for by appellant. The eleventh instruction was fully covered by the fifth and eighth instructions given; and, indeed, we are inclined to the opinion that the language used by the court was decidedly more favorable to the defendant than that embraced in the eleventh instruction as asked, and, under the rule laid down in *McKee v. Mining Co.* 8 Colo. 392, it was not error to refuse to give it.

In refusing to give the twelfth instruction as asked, there was no error, for the reason that there was no testimony offered on the part of defendant tending to prove that the injuries for which recovery was sought occurred through the negligence of a servant of the defendant; nor was such a claim, so far as the record discloses, interposed during the trial of the cause. The defendant relied

at the trial, as in this court, upon the ground of plaintiff's contributory negligence, as its defense.

It is also contended that the court erred in instructing the jury that it is not negligence to commit an error under the influence of fear produced by the appearance of sudden danger, and also that there was error in instructing to the effect that if the defendant, through its negligence, put the plaintiff in a position of immediate danger, real or apparent, and that plaintiff, through a sudden impulse of fear, attempted to escape the danger, and in so doing actually received the injury he was attempting to escape, then he may recover. We cannot agree that these objections are well taken. On the contrary, we think the instructions substantially correct, under the evidence and circumstances of the case. *Coal Co. v. Healer, supra.*

As to the question of damages, the jury were fairly and properly instructed. Ample testimony appears to show that the injuries of plaintiff were permanent; and it is utterly impossible for us to say, under the circumstances, that plaintiff, thus permanently injured, was not entitled to the amount mentioned in the verdict of the jury.

True it is that it was a question between the physicians who testified on the part of plaintiff and defendant as to whether the injuries received were of a permanent character. But it is fair to assume that the jury found that the injuries were of that character, and upon such finding based the amount of damages. The witnesses were before them, and apparently without any interest, directly or indirectly, in the result of the cause. Each were equally entitled to credit; and, in this case, "when the doctors disagree," we think it was for the jury to decide. The instructions of the court were full, and in keeping with the doctrine as announced in *Wells v. Coe*, 9 Colo. 159.

We are therefore unable to escape the conclusion that

the cause was fairly and impartially tried, the jury correctly instructed upon the law of the case, and that the evidence is sufficient to support the verdict.

The judgment should be affirmed.

PATTISON and REED, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is affirmed.

*Affirmed.*