## DENVER & BERKELEY PARK RAPID TRANSIT COMPANY v. DWYER.

1. PLEADING—NEGLIGENCE.

An allegation that the defendant negligently ran its motor, on the step of which the plaintiff was riding, past its regular stopping place at such a high rate of speed as rendered it impossible for him to alight, and carelessly and negligently ran its train into a cut, the embankment whereof had been carelessly and negligently left by defendant so near its track as to leave no space for plaintiff to escape, so that he was caught between the steps of said motor and said bank and thereby injured, is an allegation not only of negligence in carrying the plaintiff past his destination, but also of negligence in so operating its train as to cause the injuries complained of.

2. TRESPASSER ON TRAIN, WHO IS NOT.

A section man of a street car company, whose custom was to furnish such employees transportation to and from their work, riding on one of its cars by order of his foreman, is not a mere trespasser, although no fare was collected or expected from him.

3. EVIDENCE.

Conversations between the plaintiff and the foreman of the defendant company, and between the plaintiff and the engineer of the motor, concerning the seat which he took on the front platform, were admissible for the purpose of showing that he was lawfully upon the train, and also that the engineer was aware of the position occupied by him.

4. CONTRIBUTORY NEGLIGENCE.

Although the plaintiff may have been guilty of contributory negligence, if the defendant, with knowledge of his exposed condition, by the exercise of ordinary care might have prevented the injury, it was its duty to do so, and failing in this the plaintiff may recover.

5. SAME.

A party suddenly realizing that he is in danger from the negligence of another is not to be charged with contributory negligence for every error of judgment when practically instantaneous action is required.

*Appeal from the District Court of Arapahoe County.*

ACTION for damages for personal injuries. Judgment for plaintiff. Defendant appeals.

In July, 1890, The Denver & Berkeley Park Rapid Transit Company owned and operated a line of street railway ex-

tending from the city of Denver to Berkeley Lake. It operated the road by means of passenger cars drawn by steam motors, and was a common carrier of passengers for hire. The plaintiff Dwyer, at the date mentioned was an employee of the defendant company, working with others under the direction and control of a section boss or foreman, and engaged in the repair of the roadbed and track.

At its eastern terminus the road connected with a cable line running into and through the city of Denver. It was the custom of the defendant company to transport its section men, including plaintiff, to and from the work by means of a hand car. At the close of work on the day in question, this hand car being out of repair, plaintiff and his fellow workmen were directed by the section boss to board one of defendant's passing trains and to get on so as not " to bother the passengers."

This train consisted of a motor and two cars. The cars were filled with passengers and the platforms and steps crowded, and for this reason plaintiff seated himself on the front platform of the motor. This platform was an open space about eighteen inches wide, running across the motor, with an iron guard in front and bars or steps perpendicularly under the end of the platform on the sides. Plaintiff took his seat on the right-hand side of the motor, resting his feet on the step below. This necessarily caused his knees to project somewhat beyond the edge of the platform, which was on a line with the side of the motor. At the Denver terminus of the road there was a Y with an automatic switch at the point where the first arm of the Y left the main track, and a hand switch where this arm joined the other to make the stem of the Y. On the stem of the Y there was a coal house where the engine was accustomed to take on coal and water. This Y was in a cut, and on the side occupied by the plaintiff the embankment was perpendicular and so close to the track that in places the motor in passing grazed it.

There was evidence to show that trains in running to the city were accustomed to stop between the automatic switch

and the hand switch, and that at this place passengers usually left the train, after which it would pass over the stem of the Y to the coal house, and would remain there ten or fifteen minutes for the purpose of replenishing its stock of coal and water, and having done this would back down a short distance to make connection with the cable cars. It was plaintiff's intention when he boarded the motor on this occasion to alight when he reached the usual stopping place between the switches. As he mounted the motor he spoke to the engineer, saying that he thought this as comfortable a place as he could get, to which the engineer replied that it was. The evidence shows that the engineer from his position on the engine could plainly see plaintiff where he was sitting. On the day in question, before the arrival of the train at the stopping place between the switches, the hand switch was thrown by an employee of the company, referred to by the witnesses as the relief conductor. For this reason the train did not stop at the switches. Plaintiff, however, in expectation of the train making the usual stop, arose from his sitting posture and was standing on the bar or step, with his knees slightly projecting; not more so, however, than when in a sitting posture, and holding to the iron guard or rail of the platform.

Plaintiff endeavored to signal the engineer to stop, but failed to attract his attention. The train did not stop, but passing the switch entered the cut at a considerable rate of speed, and by so doing brought plaintiff into violent contact with the embankment in the cut and so broke his leg and otherwise injured him.

At the close of plaintiff's evidence the defendant moved for a nonsuit on the ground that plaintiff was guilty of such contributory negligence as barred a recovery. This motion was denied. The defendant declined to introduce evidence and the case was submitted to the jury upon the evidence of plaintiff and his witnesses. The negligence relied upon is charged in the complaint as follows:

" That upon approaching the terminus of said road nearest

to the city of Denver, said defendant, not regarding its duty
in that behalf, did so carelessly, negligently and unskillfully
conduct and operate its said train of cars, as not only to fail
to stop the same and bring the same to a halt at the regular
and proper place for stopping, and permit and enable this
plaintiff to debark from said train, but did carelessly and neg-
ligently run the same past the regular stopping place at a
high rate of speed, thus rendering it impossible for plaintiff
to debark therefrom, and did carelessly and negligently run
its said train on, to and upon a switch or side track there
situate, and against and into a cut in the embankment thereof,
which said embankment had been theretofore carelessly and
negligently left by defendant company so near to its said
switch or side track as to leave no space for plaintiff to es-
cape, so that plaintiff was caught between the steps of said
motor engine and said bank in such wise as to break plain-
tiff's leg and to inflict other and further permanent injuries
upon plaintiff.'

Mr. J. H. Brown and Mr. Milton Smith, for appellant.

Mr. George D. Talbot, Mr. Ralph Talbot and Mr.
W. H. Wadley, for appellee.

Chief Justice Hayt delivered the opinion of the court.

It is contended by appellant that under the allegations of
the complaint the breach of duty charged consisted in the
defendant company negligently carrying plaintiff past his
destination, and that for this breach at best only nominal
damages are warranted.

This argument is manifestly unsound. The injuries for
which damages are claimed are alleged to have been caused
by crushing plaintiff " between the steps of said motor en-
gine and said bank. * * * " The allegation with reference
to carrying plaintiff beyond his destination is inserted as one
of the steps leading up to these injuries. The authorities

cited and quoted as to the measure of damages for carrying a passenger beyond his destination have no application in this case. Where passengers are prevented from debarking at their destination and thereafter injured by the negligence of the carrier, it has certainly never been held that the right of recovery was in such cases limited to the rule of damages governing where recovery is sought only for carrying the passenger beyond his place of destination without affording him an opportunity to debark.

It is said that plaintiff was at most a mere trespasser upon the defendant's train, and that for this reason a recovery is unwarranted. It is unnecessary to determine the duty owing by a common carrier to a mere trespasser upon its trains, for the reason that plaintiff did not occupy that position to the defendant. He was in the defendant's employ at the time and it is undisputed that it was the defendant's custom to furnish transportation to such employees to and from their work, and that upon this occasion the hand car being out of order, the foreman substituted transportation by the train. Although no fare was collected or expected from the plaintiff the evidence shows that he was lawfully upon the train. *Rosenbaum v. St. Paul & Duluth R. R. Co.*, 38 Minn. 173.

Plaintiff's conduct in taking a seat upon the motor is not to be measured by the rules applicable to an ordinary railroad train. The latter are much more dangerous; they usually run at a high rate of speed and are not so readily under control. As a rule they stop at regular stations only, with comparatively long distances intervening, while street cars run at a less rate of speed, are readily under control and stop at each block upon signal. The roadbeds of street car lines are usually smooth and easy of access, while the car steps are near the ground and the opportunity for exit more favorable. This difference is understood and acted upon by the traveling public. Acts, therefore, which would be held as gross negligence on the part of a passenger in the case of an ordinary railroad train might not be so construed in the case of a street car.

The evidence shows that the platform upon which plain-
tiff rode resembled the front platform of a street car, and in
view of the crowded condition of the cars and the instruc-
tions of the foreman, we think the question of contributory
negligence was one proper for the consideration of the jury.
In this connection, the evidence tending to show that the
switch was a regular stopping place for defendant's trains,
was competent as showing that plaintiff had a right to expect
that he would have an opportunity to leave the train at this
point, particularly if he signaled for this purpose, as he did.

Dwyer, over appellant's objection, testified as follows:

" When I was going in the gate (at Elitch's Gardens) I
heard the foreman say, ' Don't get in so as to bother the pas-
sengers.' I came out of the gardens, * * * saw that the
train was full, and I jumped on the engine. I looked inside
at the front end and saw two or three men in there. I said
to the engineer, ' I guess this is as comfortable a seat as I
can get.' He said, ' It is about as comfortable a seat as any;
it is hot inside.' I sat down and got my pipe out and went
to smoking, and we were talking back and forth on the way
in. I sat on the platform and put my feet on that step. My
legs were beyond the side of the platform their width. Rode
that way till we came to the automatic switch on Gallup
avenue."

We deem this evidence all competent and admissible un-
der the issues. It was by the foreman's direction that plain-
tiff got upon the car and we see no valid reason for rejecting
what was said by the foreman at the time. It was certainly
competent for the purpose of showing that plaintiff was law-
fully upon the train. So, also, the conversation with the
engineer was pertinent as showing that he was aware of the
position on the motor occupied by the plaintiff, as the ques-
tion of the defendant's negligence must be determined in the
light of this knowledge on the part of the engineer. This
question was called to the attention of the jury by the court
in a number of instructions. The rule announced is in sub-
stance as follows: Although the plaintiff may have been

guilty of contributory negligence, this would not prevent a re-
covery. If the defendant with knowledge of his exposed
condition, by the exercise of ordinary care might have pre-
vented the injury, it was its duty to do so, and failing in this
the plaintiff could recover.

The above qualification of the general rule of negligence
is supported by the best of authority in England and also in
this country, and is particularly applicable to the facts in
this case. *Kansas Pacific Ry. Co. v. Cranmer*, 4 Colo. 524;
*The Denver & Berkeley Park Rapid Transit Co. v. Dwyer*, 3
Colo. Appeals, 408; *I. & S. Coasting Co. v. Tolson*, 139 U.
S. 551.

In the case cited last the action was by a wharfinger against
a steamboat company for crushing his foot between the tim-
bers of a wharf by the violent striking of a steamboat against
the wharf. There was conflicting evidence as to the negli-
gence of the defendant and the contributory negligence of
plaintiff. The supreme court in the course of its opinion sus-
taining a recovery, said, at page 559:

" The jury might well be of opinion that while there was
some negligence on his (plaintiff's) part in standing where
and as he did, yet that the officers of the boat knew just where
and how he stood, and might have avoided injuring him if
they had used reasonable care to prevent the steamboat from
striking the wharf with unusual and unnecessary violence.
If such were the facts, the defendant's negligence was the
proximate, direct and efficient cause of the injury."

We have considered this action without reference to the
fact that plaintiff arose to a standing position just before the
accident, for the reason that, it is conceded, the change
from a sitting to a standing position, did not further expose
the plaintiff to danger or in any way contribute to the accident.

It is claimed that plaintiff might have saved himself by
stepping up on the platform. Perhaps he could have done so,
but plaintiff had little, if any, time to make a choice. When
asked why he did not step up on to the platform he said:

" It was my first thought to get off, and when the second

thought came I called to the engineer, and at the third my foot was caught.   It was all so quickly done that I could not do· that."   A party suddenly realizing that he is in danger from the negligence of another.is not to be charged with contributory negligence for every error of judgment when practically instantaneous action is required.   This question was fairly submitted to the jury by the instructions and decided in favor of plaintiff, and certainly we cannot say as a matter of law .upon this review that it was not correctly determined.   *Stokes v. Saltonstall,* 13 Peters, 181; *Union Pacific Ry. Co. v. Kelley,* 4 Colo. Appeals, 325; *Silver .Cord C. M. Co. v. McDonald,* 14 Colo. 191.

Perceiving no error in· the record· the judgment will be affirmed.

*Affirmed.*

MR. JUSTICE GODDARD did not sit in this case.