[No. 4259.]

The Denver & Rio Grande Railroad Co. v. Buffehr.

1.  **Negligence—Pleading.**

    In an action against a railroad company for damages for personal injuries where the only acts of negligence charged in the complaint as constituting the proximate cause of the injury were a failure of defendant's servants to give notice of the approach of the train and that its speed was greatly in excess of the limit prescribed by the ordinances of the town in which the injury occurred, it was error to submit the case to the jury upon the question of the negligence of the engineer in failing to see plaintiff upon the track or in failing to keep an outlook in front of his engine.

2. Railroad Companies—Use of Track as Foot Path—License—
    Instructions.

Where a railroad company repeatedly protested against the
use of its track for a foot path and did all that might reasonably
be expected under the circumstances to warn the public against
such use, people using the track against such protest and warn-
ing could not acquire the rights of licensees.

3. Pleadings—Negligence—Wilfulness.

An allegation that an act was wanton, reckless and grossly
negligent is not equivalent to an allegation of a wilful or inten-
tional act.

4. Contributory Negligence—Walking Upon Railway Tracks.

A person who went upon a railroad track 600 feet from and
in plain view of a station at which a passenger train was then
standing and walked along the track between the rails in the
direction the train was headed, with an umbrella raised and
thrown across her shoulder and without looking back and was
run over by the train about 150 or 160 feet from where she
entered upon the track was as matter of law guilty of con-
tributory negligence, although she testified that when she went
upon the track she looked both ways and saw no train.

5. Contributory Negligence—Wilful or Intentional Injury.

A plaintiff though guilty of negligence may recover for an
injury wilfully or intentionally inflicted, or if after the discovery
of plaintiff's peril defendant fails to exercise ordinary care to
prevent the injury, and such failure is the proximate cause of
the injury.

6. Railroads—Negligence—Trespassers.

A railroad company is liable for injuries caused by its train
running over a trespasser walking upon its track, if after the
discovery of the trespasser's peril the engineman could by ordi-
nary care have avoided the injury, but failed to exercise ordi-
nary care. And this rule is not limited to cases where the peril
was actually discovered by those in charge of the train, but if
they ought to have discovered the trespasser's peril and failed
to do so through some fault or neglect of their own, the result
is the same as if they had discovered it and failed to use ordi-
nary care to stop the train.

*Appeal from the District Court of Lake County.*

*Action to Recover 'Damages for Personal Injuries.*

The complaint attempts to state a cause of action based on acts of the defendant showing wanton, wilful, and intentional misconduct. The answer is a general denial and a plea of contributory negligence by plaintiff. The evidence is not voluminous, or substantially conflicting. The statement of the parties is accepted as to the case thereby made, with such additions from the record as the court deems material.

On the 6th of September, 1895, appellant railroad company owned and operated a line of railroad which passes through the town of Glenwood Springs, Colorado. Its passenger station is at the corner of Pitkin avenue and Seventh street, whence the track easterly therefrom runs on a curve diagonally across Seventh street, leaving it a block east of the station, from which point on eastward the track is entirely upon private property of the appellant, except at the crossing of Grand avenue, which is about 600 feet east of the railway station. The track crosses Grand avenue, passing under a large wagon bridge, which there spans Grand river. The approach to this bridge leaves Grand avenue at a point about half a block south of its intersection with Seventh street, and passes thence over Seventh street, the railroad track and Grand river. Immediately underneath this wagon bridge is a foot bridge, the southern approach to which begins between the railroad track and the river bank. These two bridges afford practically the only means of access between the town of Glenwood Springs proper and the Hotel Colorado, which, with its baths and other improvements, is located on the northern side of the river. Travelers using the foot bridge in coming from the northern to

the southern side on their way to the town proper, necessarily cross the railroad track on Grand avenue at grade. For the convenience of its passengers, not only those whose destination is the Hotel Colorado, but those going into the business portion of the town, the company at times stops its trains at Grand avenue and there has erected a platform about eight feet wide and extending upon its private property about 190 feet easterly from Grand avenue. The level of this platform is lower than that at Seventh street, and three flights of steps have been erected, one at each end and one in the middle, leading up from the platform to Seventh street. There are no buildings or improvements of any kind between the railway track and the river, and the land between Seventh street and the river from the railway station for several blocks east of Grand avenue is the private property of the company. Some distance east of Grand avenue, and between the railroad track and the river, is a cave in which is a hot spring, to which persons resort for bathing. Seventh street and the public road into which it merges at the eastern limit of the town lead directly to this cave, but at certain seasons of the year the railroad track affords better walking than the street or the sidewalks, and persons going to the cave frequently go upon or alongside of the railroad track. The plaintiff in this case claims that this custom had existed for so long a time and was so general that the public acquired a right to use the tracks and right of way of the railway company as a highway in passing from Grand avenue to the cave. The defendant denies that any such right was thereby acquired, and says that persons so using its track are mere trespassers. The uncontradicted facts in the case are, that while the tracks had been used as a passage way for the general public, it was against the repeated protests

of the agents of the railroad company, and that sign posts had been by the company put upon its right of way warning persons against entering and crossing the company's tracks or using the property for their own convenience.

On the morning of September 6th, appellee, a resident of Leadville, had been on the north side of the river in the vicinity of the Hotel Colorado. She returned to the south side by the foot bridge apparently intending to return to her place of temporary abode in the town. On arriving at the railroad track, where it crosses Grand avenue, she concluded to go to the cave east of the town and south of the river, and with that object in view turned eastwardly from Grand avenue and walked along and upon the railroad track of the defendant between the rails. By continuing along or upon Grand avenue a few rods further south, plaintiff would have reached Seventh street, and might have continued her journey to the cave by walking on that thoroughfare free from all danger from defendant's trains. This, however, she elected not to do. Before stepping on to the track she says that she looked along it in both directions, and although there was an unobstructed view from the point where she was standing to the passenger station of the defendant 600 feet away, where was then standing the passenger train that afterwards collided with her, she says that she did not see it. After walking a few steps on the track, as the day was warm and the sun shining, she raised an umbrella over her head, and rested it on her shoulder, and, without looking back or keeping any watch or using any of her senses for the purpose of ascertaining whether or not trains were approaching her from either direction, thus continued between the rails for a distance of about 150 or 160 feet, when she was struck by the passenger train which came up

behind her and caused the injuries for which she sues. The engineer did not see plaintiff on the track, and did not know of the accident until his train reached some station farther east, though he maintains that a lookout was kept while passing through the town. There is an ordinance of the town which requires a flagman to be stationed at every railroad crossing or other suitable precaution to be taken against injury to persons and property in the operation of railroads; and there is a further requirement that no locomotive or train shall be run at a speed to exceed eight miles an hour within the town limits, and the bell attached to the locomotive is required to be rung while running there through. No evidence was produced by plaintiff as to the speed at which the train was running, only one of her witnesses saying "it looked as if it ran pretty swift." The testimony of a number of witnesses for the defendant was that the speed did not exceed six miles an hour. Some of plaintiff's witnesses testified that there was no sounding of the whistle or ringing of the bell; others said they did not remember whether the bell was rung; while the testimony of the fireman and engineman was that the bell was continuously rung from the station till the limits of the town were passed, and the whistle was sounded on approaching street crossings.

The foregoing we think is a fair summary of the material points of the evidence in so far as it affects the questions raised upon the appeal.

Messrs. Wolcott, Vaile & Waterman and Mr. Wm. W. Field for appellant.

Mr. James Glynn and Mr. Clinton Reed for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

Numerous errors are assigned, relating chiefly to the instructions of the court.   The important questions discussed are,—Was the plaintiff a licensee or a trespasser?   Was the plaintiff guilty of negligence that directly or proximately contributed to the injury?   Was the defendant guilty of what plaintiff characterizes as gross or wilful negligence?     or, speaking more accurately, was the conduct of defendant such as indicated a wilful or malicious intent to inflict injury?

We do not notice in detail the objections raised, but shall discuss and lay down the principles by which this controversy should be determined.

First: The negligent acts or mischief charged against defendant in the complaint as constituting the sole proximate cause of the injury, are that its servants did not give any warning of the approach of the train, and that its speed was greatly in excess of the limits prescribed in the town ordinance.

As we read the complaint these and these only are the particulars as to which defendant is said to have been remiss.   The court, however, submitted this branch of the case upon the alleged negligence of the engineman in not seeing plaintiff upon the track or in failing to keep an outlook in front of his engine, as it was said to be his duty to do in the circumstances of this case.   There was objection to this, and the court should have confined the case to the issues made by the pleadings.

Second: Under the facts of the case before us we do not consider it very important whether plaintiff was a trespasser or a licensee, though the latter may, as a general rule, be entitled to more consideration than the former.   Still the court erred in instructing

3

the jury that, if the railroad track had been contin-
uously,. commonly, and generally used for a number
of years prior to the accident and was then used as a
passage way by the general public, this was equiva-
lent to an acquiescence by defendant therein and con-
stituted a license by the railway company that its
track might be so used. The testimony is uncontra-
dicted that the company repeatedly protested against
this use, and did all that might reasonably be expected
in such circumstances to warn the public against us-
ing the railroad property for their. own convenience.
Instead of inducing or alluring people to enter upon
its property or acquiescing in its use as a highway, the
contrary is true, viz: that defendant repeatedly
warned people against the same. It is difficult to con-
ceive how it is possible for a license thus to be ac-
quired.

But, though plaintiff was a trespasser, it does
not necessarily follow that she cannot recover if the
injury was wilfully or intentionally inflicted, as plain-
tiff in her pleading has tried to aver, and if the other
essentials of such a cause of action are established.
Evidently the plaintiff had this in mind when the
complaint was drawn, for she does not content her-
self with charging that defendant was guilty of mere
negligence, but she attempted, at least, to aver that
her injuries were occasioned by an intentional, wil-
ful and deliberate act or omission of duty of defend-
ant's servant, and she must be held to proof of such
act or omission. And so we must regard the com-
plaint as stating a cause of action based not upon
mere negligence, but upon an intentional, wilful act,
or dereliction of duty on the part of defendant's ser-
vant, characterized by recklessness or heedlessness
as to the consequences of his act, or failure to act.

It may be that this cause of action is defectively
stated, and we think it is; but both parties seem to

have proceeded upon the assumption that something more than mere negligence of defendant was alleged. In passing we observe that an allegation that an act is wanton, reckless, and grossly negligent, is not equivalent to an allegation of a wilful or an intentional act.

Third: That plaintiff was guilty of negligence of a flagrant sort we have not the slightest doubt. She testifies that before she stepped upon the railroad track she looked both ways, but did not see any train. The uncontradicted evidence is, and indeed plaintiff so alleges in her complaint, that at the time she went upon the track the passenger train, the engine of which afterwards struck her and caused the injuries, was standing at the station about 600 feet to the east of Grand avenue where it intersects the railroad track. The view was wholly unobstructed, either by cars or natural objects. The complaint further says that from the moment the train pulled out from the station until the engine threw plaintiff from the track, the engineer could plainly see her for she was constantly in full view. If this is so, and plaintiff is bound by it, then she certainly could have seen the train. It is true she says she did not see it. That, however, is her misfortune, not defendant's fault. The train was there, and if she did not see it, it was because she was heedless or careless or absent minded. If she had carefully looked, she would have seen the train. That, however, is not the only respect in which she was guilty of negligence. While the authorities differ as to whether mere walking between the rails of a railroad track is negligence *per se,* they are unanimous upon the proposition that the presence of a railroad track itself puts a reasonably careful person upon notice that danger is present; and when one deliberately walks along a railroad track without properly making use either of his sense of hearing or

of sight to avert danger, he is guilty of negligence.
The undisputed facts are that plaintiff stepped upon
the railroad track at a time when the passenger train
was 600 feet away to the westward, which she saw, or
ought to have seen, and she deliberately turned her
face eastward, and walked in the center of the track
with an umbrella raised and thrown across her shoul-
der without once looking back from the time she be-
gan her walk until she had traversed a distance of
150 or 160 feet, and she did not, as she says, hear the
noise of the approaching train. It must have made
more or less noise because it stopped at the station
for fifteen or twenty minutes, and in going eastward
it was on an up-grade, and in the very nature of
things the running of the train could not have been
unattended with noise, and plaintiff's attention was
not distracted by noises from any other sources. Yet
plaintiff says that the first intimation she had of its
approach was at the very moment of collision, and at
once thereafter she became unconscious.

So we say that as a matter of law, under the un-
contradicted testimony, plaintiff was guilty of negli-
gence. It has been directly held in a number of cases
that one does not do his full duty merely by looking
or listening before going on to a railroad track, but
it is his duty to keep a constant watch for the ap-
proach of a train or an engine while thereafter walk-
ing along it. *I. C. R. R. Co. v. Godfrey*, 71 Ill., 500,
508; *Cleveland. C., C. & St. Louis Ry. Co. v. Tartt*,
64 Fed. Rep., 823; *Candelaria v. A., T. & S. F. Ry.
Co.*, 6 New Mexico, 266, 279.

This court and our court of appeals have held
that such acts as plaintiff admits constitute contrib-
utory negligence. *Kennedy v. D. S. P. & P. Ry. Co.*,
10 Colo., 495; *Denver &c., R. Co. v. Ryan*, 17 Colo.,
98-101; *C. C. R. R. Co. v. Holmes*, 5 Colo., 197; *Da-
vidson v, Tramway Co.*, 4 Colo. App., 283.

In actions grounded on negligence the general rule is that a plaintiff who is guilty of negligence which contributes to, or is a direct cause of, his injury, may not recover; and if the charge against defendant here was mere negligence, the court below, upon the admitted facts, ought to have directed a verdict in its favor. Were this not a case of an intentional or wilful act or omission, but merely one where, notwithstanding the negligence of the plaintiff the defendant was sought to be held responsible for the accident because it had a last clear opportunity of avoiding it, the question would be presented whether it was a fit occasion for the application of the doctrine of ''last clear chance.'' Learned courts differ in the reasons given for enforcing it, and much confusion has arisen in the attempt to fasten a liability upon, or give relief to, a defendant in such circumstances. An interesting article upon this question is found in Vol. 8, Case and Comment, for April, 1902. But we are not dealing with that kind of a case. Here the alleged grievance was an intentional infliction of injury, and we think by the great weight of authority, a plaintiff, though guilty of negligence, may still recover, if after the discovery of his peril defendant fails to exercise ordinary care to prevent the injury, if, in fact, such failure of defendant was its proximate or direct cause, and if, as said by this court in *Railway Company v. Crisman,* 19 Colo., 30 and 35, defendant was ''also guilty of such conduct as implied an intent or willingness to cause the injury.'' *Denver B. P. R. T. Co. v. Dwyer,* 20 Colo., 132; *K. P. Ry. Co. v. Cranmer,* 4 Colo., 524.

In the Crisman case the element of wilfulness seems to have been considered present; but there is some doubt about it as to the other two cases cited. However that may be, it is clear that the doctrine which we have announced applies to a case where

wilful or intentional injury is charged against a defendant. Yet it is to be always borne in mind that if plaintiff's own negligence,—being in point of time either prior, concurrent with, or subsequent to, that of the defendant,—turns out to be the sole proximate or direct cause of the injury, she is not entitled to recover whatever the cause of action be. There was some evidence, which should have been submitted to the jury under appropriate instructions upon these various propositions. Beach on Contributory Negligence, §§ 54-57.

Assuming then that plaintiff was guilty of negligence, the pivotal question in the case is whether the accident might have been averted had defendant,— after discovering plaintiff's peril, or after her peril might have been discovered by the exercise of ordinary care and diligence,—used ordinary care to stop the train. In other words, was the conduct of the engineer in not stopping his train after he saw, or by the exercise of reasonable care and diligence might have seen, the plaintiff, such as to show an utter and wanton indifference to the consequences of his act or omission to act and was such conduct the sole proximate and direct cause of the injury; or was plaintiff's negligence, continuing down to the moment of the collision, the sole proximate cause. There are authorities which hold that the mere failure of an engineer to cause the bell attached to his engine to be rung, or the whistle to be sounded, is not of itself sufficient proof to establish a wilful intent to cause injury, and such decision we think is right. And it is proper to add that the authorities hold that where an engineer sees an adult walking on the track in front of an approaching train, and knows of no reason, like deafness or drunkenness or undue prostration that prevents him from acting, he is justified in pre-

suming that the pedestrian will step off before a collision occurs.

Fourth: Defendant's counsel strenuously insists, however, that a railroad company is not bound to take any precautions for the safety of trespassers and that in no event may a trespasser recover from it for injuries inflicted while he is upon its private property, except at street crossings, unless it is guilty of a failure to exercise ordinary care after it *actually* discovers that the trespasser is in a position of peril. In other words, the contention is that even though by the exercise of ordinary care, the peril might have been discovered, yet, if as a matter of fact actual knowledge of the trespasser's peril was not acquired by the company's servants in time to enable them by ordinary care to avert the accident, no recovery can be had. Undoubtedly a large number of able courts have so decided; but this court, in the case of *Denver, &c., Company v. Dwyer, supra,* has at least foreshadowed a qualification of the general rule contended for by defendant. The direct question, however, was not then presented as to whether recovery was limited to cases where actual knowledge is shown, but we think the better rule in applying the doctrine of last clear chance, or in cases of wilful act, is, as stated in 2 Shearman & Redfield on Negligence, § 484, that if a defendant fails to see what he was bound to look for and ought to have seen, he is guilty of negligence. It is upon a somewhat similar principle that we have just held plaintiff guilty of negligence in not seeing the passenger train at the station when she says she looked for it. She ought to have seen it, and if she had exercised reasonable care, would have seen it; and the fact that she did not, will not relieve her from the results of her negligence. So, with respect to the defendant, though its engineman did not see plaintiff upon the track in time to avert the accident, still, if,

in the circumstances of this case, he ought to have seen her, and through some fault or neglect of his own did not, the result is the same as if he had seen her and did not stop his train, if, with safety to his passengers, he could have done so after actually seeing her.

By an enforcement of the strict rule the judgment might be reversed with instructions to the trial court to dismiss the action, for it was not established by proof, or submitted by the court upon the charges of the specific misconduct which the plaintiff stated in her complaint, but rather upon the alleged wilful and wanton conduct of the engineer in not keeping a sufficient lookout for persons upon the track at this place. But both parties we think, by their conduct, have waived a strict compliance with the rules of pleading, and at least one, and possibly both, of them supposed that a cause of action based upon the wilful misconduct of defendant was pleaded.

The judgment must be reversed because of rulings by the trial court opposed to the principles herein laid down; but we shall not, as requested by defendant, order the action dismissed, but will permit the complaint to be amended, if the plaintiff sees fit, and remand the cause for a new trial, in accordance with the views herein expressed.

*Reversed.*