Thomson, J.,
delivered the opinion of the court.
The plaintiff brought her action in the court below to recover damages for’ the death of her husband, who was struck and killed by an elevator in the possession of and operated by the defendants. The only question presented for our determination relates to the sufficiency of the complaint. The *360 cause of action is stated as follows : “ That at the dates hereinafter set forth the building hereinafter mentioned and referred to as the Boston Building, located on the south corner of Champa and Seventeenth streets, in Denver, Colo., was in the possession of the defendants, and the elevators in said building were being operated by the said defendants, for the use of the contractors, sub-contractors, occupants, and persons visiting or having business with the occupants of the said building.
“ That this plaintiff is the widow of Feodore Mau, deceased, hereinafter mentioned; and that she and the said Feodore Mau were married in Denver, Colo., on, to wit, the 16th day of December, A. D. 1890.
“ That on the 19th day of December, A. D. 1890, the said Feodore Mau was in the employ of Fritz Thies, wholesale liquor dealer of Denver, Colo., and in the course of his employment was sent to the said Boston Building to the office of the United States Internal Bevenue located therein, on a matter of business with the officers of the said United States revenue then doing business in the said building.
“ That on the day last aforesaid one of the elevators in the . said building was in operation carrying as passengers, to and from the different floors thereof, occupants of the said building, and persons having business with them (the stairway in said building being still unfinished and unfit for'use.)
“ That the said building is constructed and arranged for general business purposes, and contains a large number of business offices.
“ That the said Feodore Mau, deceased, was taken by the said elevator to the third floor of the said building on which said office of the United States Internal Bevenue was located, and, after completing his said business he was sent there to transact, returned to the said elevator to be reconveyed to the ground floor. That at that time said elevator was in full operation, but that the door at which the said Feodore Mau was to enter from the hall into such elevator was unfinished *361 and incomplete; that is to say, the door was without any screen above the crossbar or centerpiece thereof.
“ That it is the general custom in Denver and other cities to make the doors leading to passenger elevators of a substantial frame with crossbar or centerpiece, and to fill in the open space above such crossbar and centerpiece with a screen of iron, brass or other metallic bars or nettings, to keep passengers from being struck by the elevators as they pass up and down the shafts.
“ That the elevator in the said building by which the said Feodore Mau was killed is a passenger elevator, and moves very rapidly with scarcely a perceptible noise, so that, in effect, no warning is given of its approach; and that said elevator, as it moves in its shaft, approaches very close to the door leading to it, so that the persons using the building were exposed to great danger from said elevator.
“ That no notice was placed at the said elevator warning persons of the danger from said elevator.
“ That the said Feodore Mau was never in said building, as plaintiff is informed and believes, except on the said occasion of the said 19th day of December, A. D. 1890, when he was killed as herein alleged.
“ That on the said 19th day of December, A. D. 1890, while in said building aforesaid, and waiting for said, elevator on said third floor, for the purpose of being convejred to the ground floor, said Feodore Mau, while looking down the shaft of the said elevator, through the said opening in the said door, was killed by the said elevator coming down the shaft noiselessly and without warning, striking him on the head and crushing him between the bottom of the elevator-ear and the middle crossbar or centerpiece of the said unfinished door.
“ That the person in charge of the said elevator for the defendants was supplied with a whistle to be used while going up and down the elevator shaft to warn everybody of the approach of the elevator, but that such whistle was not blown as the elevator approached and killed the said Feodore Mau, and that the said Feodore Mau, deceased, had no means of *362 locating the said elevator-car in the absence of such whistling, except by looking into the said shaft for it.
“ That the said Feodore Mau was unacquainted with the operation and use of passenger elevators, and unadvised of the danger in which he placed himself by looking down the said elevator shaft at the time he was killed, as herein alleged.
“ That by the wrongful neglect of the defendants to screen and complete said door, and that by the wrongful neglect of the defendants to notify the said Feodore Mau of thé danger, he was not advised of the risk he incurred in looking down said shaft, and by the neglect of the defendants to give any signal of the approach of the said elevator-car at the time he was killed, he was not warned of the danger to which he was exposed, and that by their said wrongful neglect the defendants caused the death of the said Feodore Mau.”
A demurrer for the want of facts to entitle the plaintiff to a recovery was sustained, and the plaintiff having declined to amend, judgment was accordingly given against her. She brings the case here by writ of error. The objection made to the complaint is, that it shows upon its face that the death of the deceased was the result of his own negligence.
The question of negligence is a mixed one of law and fact. Where the facts are disputed, or of doubtful character, the question must be submitted to the jury under the instructions of the court; but where there is no controversy as to the facts, and from these it clearly appears what course a person of ordinary prudence will pursue under the circumstances, the question of negligence is purely one of law. Fernandez v. Sacramento City R. Co., 52 Cal. 45.
And where the facts show negligence on the part of the plaintiff contributing to the accident, the judge may withdraw the case from the jury. D. & R. G. R. Co. v. Ryan, 17 Colo. 103; Flemming v. W. P. R. Co., 49 Cal. 253; Donaldson v. M. & St. P. R. Co., 21 Minn. 293; Brown, Adm'x v. M. & St. P. R. Co., 22 Minn. 165.
In such case it is immaterial whether the question of law arises out of the evidence introduced at the trial, or out of *363 the complaint itself. If the complaint on its face shows clearly-defined and palpable negligence on the part of the, person injured contributing to the injury; or in other words, if the complaint, together with the cause of action, sets forth the facts which defeat the action, then, taking the whole complaint together, there is no cause of action stated, and it is proper to demur.
It appears from this complaint that the deceased, on the day of the accident, rode in the elevator to the third floor of the building, and having transacted his business, returned to the elevator to be reconveyed to the starting point. Now as to whether he had ever been in that building before, or as to whether he was acquainted or unacquainted with the operation of passenger elevators, is, in view of the facts disclosed by the complaint, a matter of no consequence. He had used the elevator and knew what its purpose was. He had ridden up in it. He knew that it would descend again, because he was waiting for its descent, in order that he might return in it. He knew that the shaft was for the passage up and down within it of the elevator, and he must have known that it was for no other purpose. He knew the exposed and unprotected condition of the opening to the elevator, because he had just passed through it in leaving, and was waiting to pass through it again in returning. He had the best means of knowledge that he possibty could have of the noiseless and rapid character of its motion, namely, personal observation. There was not an element of danger connected with the elevator or the shaft, that was not distinctly visible; there was nothing about either that could be made a source of danger to him without his own active co-operation; and he is presumed to liave had sufficient knowledge of the relation of cause and effect, to understand that if his head was within the shaft when the elevator passed by in its descent, serious, if not fatal, injury was inevitable. What the purpose of the whistle was is not explicitly stated, but it is a fair inference from the complaint that it was to notify passengers of the approach of the elevator, so that they might be ready to board *364 it when it reached their floor. It surely was not to warn persons who were transacting business in the building, not to thrust their heads into the elevator shaft. The defendants could not be expected to assume that men in possession of their faculties would be engaged in acts so palpably negligent.
It seems quite clear to us that the allegations in the complaint do not warrant any recovery in this ease, but in view of the earnestness and evident sincerity with which plaintiff’s counsel contended for his position, we have given the authorities submitted by him a close and careful examination; and in the course of such examination have found no new principle announced. There is not in any of them an attempt at departure from the old and established doctrines on the subject of negligence. Unless the injury suffered was recklessly or intentionally inflicted, then it must appear that it was occasioned by the defendants’ negligence, without contributory negligence on the part of the deceased; and counsel has cited us to nothing in contravention of this proposition. It would serve no useful purpose to enter into an extended review of the authorities to which we have been referred, but we will notice a few of them briefly in confirmation of what we have said. Cooley in his work on Torts, at page 550, says: “ Whether invited upon his premises by the contract of service, or by the calls of business, or by direct request, is immaterial; the party extending the invitation owes a duty to the party accepting it to see that at least ordinary care and prudence is exercised to protect him against dangers not within his knowledge, and not open to observation.” In 1st Thompson on Negligence, commencing at page 283, an English ease, the final decision of which was reached in the exchequer chamber is set forth in full. The doctrine of that case is stated by Kelly, C. B., in quoting with approval the following in the judgment of the court below. “ With respect to such a visitor, at least, we consider it settled law, that he using reasonable care on his part for his own safety, is entitled to .expect that the occu *365 piei’ shall on his part use reasonable eare to prevent damage, or unusual danger which he knows or ought to know.” The cases of Schumacher v. St. L. & S. F. R. Co., 29 Fed. Rep. 174, and Eskridge, Ex’r v. C. N. & O. T. P. R. Co., 12 S. W. R., 580, turn upon the question of willful negligence. In the latter case, willful negligence is defined to be “ conduct such as to evidence reckless indifference as to the safety of the public, or an intentional failure to perform a plain and manifest duty, in the performance of which the public and the party injured had an interest; ” and in the former the principle is stated thus : “ The fact that one has carelessly put himself in a place of danger is never an excuse for another purposely or recklessly injuring him. An act may be legally willful without a direct intent. It may be so willful if reckless.” We find nothing in these authorities in any manner applicable to the facts of the case before us. The deceased had a tacit invitation to enter the building for the transaction of his business, and had a right to use the elevator to be conveyed to the floor he desired to reach and'to return therefrom. He had a right to assume that the elevator was in good order and condition, and would convey him safely, and that the means of ingress and egress could be used without danger; but outside of the elevator he had no right to use the shaft for'any purpose; he had no right to be within, or to have any part of his person within the shaft except as he was at the same time within the elevator. As long as he was using the building and its appliances for the purposes for which he was invited to use them, and for which he had a right to use them, he was in no danger; it was only when he undertook to use them in a manner outside of any invitation and any right which he had, that the disaster occurred. If the employee of defendants in charge of the elevator had, while descending, observed the position of the deceased, and had neglected to warn him, or had neglected to stop the elevator if he had time to do so, and had nevertheless suffered the elevator to proceed until it came in contact with the deceased, that would have been evidence of *366 willful negligence, and a wanton disregard of life, against which the careless act of the deceased would not avail the defendants; but the complaint shows no negligence of that kind. The negligence complained of is the failure to properly protect the entrance to the elevator, which when the elevator was not present, was also an entrance to the shaft. It is true that if the opening had been so protected, the deceased would probably have been unable to thrust his head into the shaft, but we are not sure that he could not have found some other means of equally unnecessary danger; and as to him, with the knowledge of the situation which he possessed, or ought to.have possessed, the failure of the defendants in that regard can hardly be said to he negligence.
It is possible that while the opening was in the exposed condition described in the complaint, a case might have arisen in which the defendants would be held liable for a resulting injury, but such a case would differ widely in all its distinctive features from the one before us. If a man in his sound senses, with his eyes open, voluntarily and deliberately, even if carelessly, thrust himself into the jaws of death, we know of no theory upon which anyone can be held responsible for the consequences of his act but himself.
The demurrer was rightly sustained, and the judgment below was correct and will be affirmed.

Affirmed.