[No. 4659.]

THE UNION COAL & COKE COMPANY v. SUNDBERG.

1. **Damages—Master and Servant—Death of Servant—Dangerous Appliances—Contributory Negligence.**

Defendant operated a gravity tram road up the side of a mountain to the entry of its coal mine, over which loaded cars descended from the mine by means of a cable, and empty cars were drawn up by the weight of the loaded ones, and at the foot of the incline a notice was posted prohibiting employees from using the empty cars for riding to the mine, although its superintendent had knowledge that the employees did sometimes do so. Deceased was a man 34 years of age, presumably of average intelligence, an experienced miner, had been employed at the mine 16 months, and was familiar with the manner of operating the tram cars. On the morning of the accident de-

ceased, with other miners, boarded an empty train of tram cars, and the former, instead of getting inside the car, which he could have done, took a position on the outside of the front end of the foremost car, with his left foot on the bumper of the car and his right foot on the cable, and, just as the train was passing over the knuckle, deceased fell, or was thrown from his position, and was run over and killed. Held, that deceased, as a matter of law, was guilty of contributory negligence:—P. 13.

2.  Appellate Practice—Province of Jury—Facts Undisputed—
       Duty of the Court—Directing Verdict.

Where the undisputed evidence, as shown in the record on appeal in an action for the death of a servant, shows that there can be no recovery because of contributory negligence of deceased, a reversal of the judgment on this ground is a ruling on the question of law, and is not an invasion of the province of the jury, for, in accordance with such facts, it was the duty of the trial court to have directed a verdict for the defendant upon the latter's request.—P. 17.

*Appeal from the District Court of Las Animas
County.*
*Hon. Jesse G. Northcutt, Judge.*

Action by Edna Sundberg against the Union Coal and Coke Company. From a judgment for plaintiff, defendant appeals.          *Reversed.*

Messrs. Wolcott, Vaile & Waterman, Mr. H. H. Dunham, and Mr. W. W. Anderson (Mr. Wm. W. Field of counsel), for appellant.

Mr. John J. Hendrick, Mr. R. T. Yeaman, and Mr. John A. Gordon (Mr. Calvin E. Reed of counsel), for appellee.

Mr. Justice Maxwell delivered the opinion of the court:

In July, 1898, appellant was operating a coal mine in Las Animas county. The mine is situated near the top of a mountain. At the foot of the mountain is a railroad track. The output of the mine is delivered to the railroad cars by means of a tramway and cars operated by appellant.

The tramway is built on the slope of the mountain, from the platform at the railroad track to the entry to the mine, a distance of about 1500 feet. The lower 900 feet of track is laid at an angle of 16° 20′ from the horizontal, and the upper 600 feet at an angle of 32° 30′ from the horizontal. From the brow of the mountain or "knuckle," as it is termed by the witnesses, to the entry to the mine, there is a practically level space of about 65 feet.

On this level space there are double tracks for the accommodation of empty and loaded cars. From the "knuckle" to the passing point, about half way down the incline, there is a single track. At the passing point there are double tracks for a space sufficient to allow the down-going cars to pass the up-coming cars and from thence to the platform at the foot of the incline the track is single, where there is another space of double tracking for the accommodation of empty and loaded cars.

The cars upon this tramway are operated by gravity.

At the entry to the mine are two drums upon a single shaft, upon each of which drums is wound a wire cable so arranged that as the cable unwinds from one drum it is wound upon the other. One end of the cable being attached to a train of loaded cars and the train started over the "knuckle," down the incline, the other end of the cable having been attached to a train of empty cars at the foot of the incline, the weight of the train of loaded cars in their descent unwinding the cable from one drum, necessarily winds upon the other drum the cable attached to the train of empty cars, and thus the trains of cars are operated up and down the incline.

To equalize the weight of the train of loaded cars and the train of empty cars, and so control the speed of both trains, a brake band encircling the

drum is provided which is operated by means of a cable attached to one end thereof, the other end being stationary, which brake cable extends to a pilot wheel at the brow of the hill or "knuckle," is attached thereto, and is under the control of an employee, who is thus situated to enable him to have at all times an unobstructed view of the down-going and up-coming trains on the tramway.

In the operation of the trains of cars upon the tramway, the object is to land the loaded cars on the platform at the foot of the incline, and the empty cars over the "knuckle" and upon the level space at the entry to the mine. Otherwise it is necessary to draw the empty cars over the "knuckle" by animal power.

The length of the cable attached to the trains is so adjusted that the operator of the brake, by controlling the speed of the trains, could and did accomplish this object.

When a train of cars is drawn over the "knuckle," the application of the brake to the drum causes it to stop, and the cable attached to the cars drops to the ground, the momentum of the cars frequently carrying them some distance towards the entry of the mine.

The cars in use upon the tramway are about 9 feet long, consisting of a rectangular box, resting upon two axles, running upon four wheels, constructed for the purpose of transporting coal from the mine and supplies to the mine, and for no other purpose.

There are two wooden bumpers on each end of the cars 8 to 10 inches square.

The cable, a 1-inch wire rope, is attached to the bumpers by means of a rope socket, clevis and pin. A train of cars consists of three cars.

There is a pathway or trail from the foot of the mountain to the mine for the use of employees of the

mine. Some of the employees used the trail. Many of them, however, rode in the empty cars up the incline to the mine. This practice was against a warning posted by the company at the foot of the incline, although the superintendent of the company at the mine knew that it was indulged in and permitted it to be done.

On the morning of July 25, 1901, a number of the employees of the mine, among whom was Charles Sundberg, were at the foot of the incline. A train of empty cars was about to start up the incline. Six of the employees got into the cars; Charles Sundberg took a position on the outside of the front end of the foremost car of the train, his left foot on the bumper of the car, his right foot on the cable. The train was drawn to the top of the incline. Just after the train had passed over the ''knuckle,'' Charles Sundberg fell or was thrown from his position as above described, across the track in front of the train of cars, was run over by the first car and the front wheels of the second car, and as a result of the injuries thus received, died within an hour.

His widow instituted this suit to recover damages for his death, alleging in her complaint that his death was caused solely by the negligence of the company, and while the deceased was in the exercise of due care and diligence, and free from any carelessness or negligence on his part.

The defense was a general denial of the negligence charged, and contributory negligence of the deceased.

A trial of the cause to a jury resulted in a verdict and judgment in favor of plaintiff, for the sum of $5000.00, to reverse which is this appeal.

The only question which we shall discuss, and which to our minds is decisive of the case, is, did the

negligence of deceased contribute to the cause of his death?

Deceased was a man 34 years of age, presumably of average intelligence, an experienced miner. He had been employed at the mine 16 months, and must have been familiar with this tramway, the manner of operating the trains thereon and the appliances by means of which such trains were operated.

The whole scheme was open, obvious and easy of comprehension to a man of ordinary intelligence; no hidden, latent, invisible or complex agency, power or appliance was in use, requiring expert knowledge or experience to understand it.

With knowledge which he must have had from the circumstances of the case, he voluntarily, without excuse, and recklessly placed himself in a position of known, extreme and perilous danger.

That a position *in* the cars was considered dangerous is evidenced by the fact, that the company posted notices warning employees of the danger of riding *in* them. If it was dangerous to ride *in* the cars, the danger of riding *outside,* on the front end of the foremost car, with one foot on the bumper and the other on the cable, is scarcely conceivable.

It is not claimed that any officer or agent of the company directed, requested, permitted or knew that deceased took the described position on the train, hence his act was voluntary.

The evidence shows that 8 or 9 men could ride in the three cars, hence his act was without excuse, as 7 men only, including the deceased, boarded this train.

The fact that none of the men who rode *in* the cars were injured, proved beyond a doubt, that the act of deceased was reckless, and in utter and absolute disregard of his personal safety.

It is difficult for us to conceive of a more wanton disregard of every impulse and principle which should govern and control men of ordinary intelligence, prudence and care, in the preservation of their lives and safety, than was exhibited by the deceased in this case.

He certainly was the author of his own misfortune, and upon him alone must rest the blame for the deplorable accident which resulted.

If a recovery could be sustained under the undisputed facts in this case, a person may bring an injury upon himself and then hold another responsible in damages therefor.

For the law decisive of this case, it is unnecessary to look beyond the reported decisions of the courts of this jurisdiction.

The case most nearly in point as to the facts involved, is that of *Jackson v. Crilly,* 16 Colo. 103, in which this court said, at page 106:

"The testimony clearly shows that the deceased was in a place of known danger; that he put himself in this place of danger voluntarily, and it may be said, recklessly. It is beyond all contradiction that the occupancy of the place of danger caused or contributed to his death. If he had been standing up or seated inside the box, or if he had, within the time after entering the car and ascertaining its crowded condition, and before the starting of the train, sought a position in the next or adjoining car, the lamentable accident would probably not have resulted. It is admitted by the testimony and by the strongest witnesses, and, it might be said, by the most willing witnesses, on the part of the plaintiff, that by a little inconvenience to himself he could have stood up in the car as others did, and thus avoided the accident. There was room for him if there were room for others, and he should have taken a place of safety.

He was not an infant nor *non compos.* The liability of the company was conditioned upon the exercise of reasonable and proper care and caution on his part. Without the latter the former could not arise. He took upon himself the right and privilege of riding on the rear end of a box-car, seating himself upon a board not exceeding in thickness two and one-half inches, with his feet elevated by being placed upon the seat directly in front of him, and with no possible opportunity of protecting himself in case of a sudden jolt or jar of the car; and we cannot escape the conclusion that his death was due to his own folly and recklessness. He himself was the author of his own misfortune. This is shown with as near an approach of demonstration as anything short of mathematics will permit. It is a well-known principle of law that where a man negligently and without excuse places himself in a place of known danger, and thereby suffers an injury at the hands of another, either wholly or partially by means of his own act, he cannot recover damages for the injury sustained. The contributory negligence which prevents recovery for an injury, however, must be such as co-operates in causing the injury, and without which the injury would not have happened. The true test is, did the plaintiff's negligence directly contribute to the production of the injury complained of? If it did, there can be no recovery; if it did not, it is not to be considered.''

And again at page 108:

''Voluntarily, as one of those who on that day was engaged in the pursuit of pleasure, the deceased entered this crowded car, and assumed a dangerous position, notwithstanding the fact that the adjoining car had ample room in which he could have found convenience, comfort and safety, and seated himself on the rear end of the car, and in a position which any man of ordinary prudence ought to know was

unsafe, ought to know that in case of the slightest accident or jolt he was liable to fall. No prudent man of ordinary intelligence, sober, in full possession of his faculties, with a due regard for his life, possessing some knowledge of journeying by railroad, and the liability to accident on occasions similar to the one in which deceased lost his life, could fail to conclude that a more perilous situation could not have been assumed by any one than that taken by Crilly.''

To the same effect see: *R. R. Co. v. Martin,* 7 Colo. 582, 593; *Lord v. Pueblo S. & R. Co.,* 12 Colo. 390, 393; *Victor Coal Co. v. Muir,* 20 Colo. 320, 330; *Acme Coal Co. v. McIvor,* 5 Colo. App. 267, 281.

Under the facts of this case, the evidence of plaintiff having established beyond dispute the contributory negligence of the deceased, it was the duty of the court under the rule established in this jurisdiction, to have directed the jury to return a verdict for the defendant, upon the request made therefor by the defendant at the close of the testimony.

This request was denied, which ruling of the court is assigned as error.

In *Behrens v. Ry. Co.,* 5 Colo. 400, 404, it is said:

''In actions of this character, it is incumbent upon the plaintiff to make out a *prima facie* case in his favor showing that the damages claimed by him resulted from the negligence of the defendant. And where it affirmatively appears from his own evidence that the want of due prudence upon his part was the proximate cause of the injury complained of, it becomes the duty of the court, upon a motion made for nonsuit, to decide as a question of law, that the action cannot be maintained.''

And in *Lord v. Pueblo S. & R. Co., supra:*

''If the evidence, in the most favorable light in which it may reasonably be considered in behalf of

the plaintiff, shows that the plaintiff. was guilty of negligence which contributed to cause the injury as alleged and without which the injury would not have happened, then the court may properly nonsuit the plaintiff, or direct a verdict in favor of defendant.''

Also 'in *R. R. Co. v. Ryan,* 17 Colo. 98:

''It sometimes happens that evidence tending to show contributory negligence on the part of plaintiff may be elicited from his own witnesses when giving their testimony in chief.    In such case, unless such evidence be contradicted, or rebutted by counter evidence tending to show plaintiff's diligence, or freedom from negligence, he should, of course, suffer defeat, either by nonsuit or by the verdict of the jury.''

See also *Jackson v. Crilly, supra; R. R. Co. v. Pickard,* 8 Colo. 163; *Kennedy v. Railway Co.,* 10 Colo. 493; *R. R. Co. v. Martin, supra; Mau v. Morse,* 3 Colo. App. 359; *Denver, etc., Co. v. Dwyer,* 3 Colo. App. 408, 411.

Under the above authorities it was the duty of the court to grant defendant's request for a directed verdict.    Its failure to do so was error which will necessitate the reversal of the judgment.

Upon the oral argument, it was very forcibly urged by learned counsel for appellee that, a reversal of this case would involve a departure from the established rule of this court, that the verdict of the jury will not be disturbed where there is evidence to support it, and that the question of contributory negligence, having been submitted to the jury and decided in favor of plaintiff, this court should not invade the province of the jury.

We take the evidence as we find it in the record, and decided on the undisputed evidence, there could be no recovery, for the reason, that such undisputed evidence discloses that there was contributory negligence on the part of the deceased.    The court must

2

decide the legal effect of the evidence in the record. If, from the undisputed evidence, one inference or conclusion only can be drawn, and that is, that there was contributory negligence, it must be so adjudged as matter of law and the court must declare the law.

In ruling that there was contributory negligence, the court does not rule upon a question of fact for the facts were undisputed.

"Where a judge rules that there is no evidence of negligence, he does something more than is embraced in the ordinary ruling, that there is no evidence of a fact; he rules that the acts or omissions proved, or in question, do not constitute a ground of legal liability, and in this way the law is gradually enriching itself from daily life."—Holmes' Common Law, 120.

This principle applies here, for we rule, not that there is or is not evidence of a fact, but that the disputed facts do not create a legal liability by reason of the contributory negligence of the deceased.

It seems to us, that but one conclusion can be drawn from the undisputed facts in this case, and that such conclusion is indisputable, viewing the evidence in the most favorable light possible in behalf of plaintiff, and that is, that there was such reckless disregard of his life and safety, such negligence, upon the part of deceased, as was the direct and proximate cause of his death.

The judgment will be reversed.　　　*Reversed.*

The CHIEF JUSTICE and Mr. JUSTICE GUNTER concurring.