[No. 5728.]

The Denver City Tramway Company v. Wright.

1. Practice—Motion for Judgment Non-Obstante is not to be interposed by the defendant.—(370)

2. Negligence — A Question for the Jury — Save where the facts are undisputed and only one inference can be drawn therefrom.—(370)

3. Street Railway Companies — Duty Towards Those Upon the Track—One operating a street railway car must use reasonable care to avoid injury to those upon the street. Seeing one upon or near to the tracks, he is not to rest upon the assumption that the person will turn out in order to avoid the car, for so long a time that it will be impossible to check the car, or give effectual warning of its approach in case of necessity.—(376)

Hundreds of wheelmen were riding daily between the two tracks of the defendant's railway. In passing a car they were accustomed to "lay over" to the other track. The motorman saw the deceased riding upon his bicycle between the tracks, two or three hundred feet in advance of him; he could see also a car approaching from the other direction, and that deceased

was "laying over" to avoid this car, and that he gave no indication that he was aware of the car approaching him from the rear. It was the duty of the motorman to so control his car that it might be speedily brought to a stop. Merely sounding the gong was not sufficient.—(376)

4. **Contributory Negligence — Travelers on Street Railway Track**—It is not negligence per se for a pedestrian, or any traveler using the ordinary means of locomotion, to travel the public street between the tracks of the street railway, or to walk or propel himself along or across them; but it is his duty to use reasonable care to avoid injury.—(375)

5. **Contributory Negligence—When Not a Bar to Recovery—** One receiving an injury by the negligence of another is entitled to an action, even though his own negligence contributed to the injury, if the offending party, after becoming aware of the peril of the other, or after, by due care, he could have been cognizant of it, fails to exercise due care to avoid the injury, and such negligence on his part was the approximate cause of the injury. —(373)

6. **Appeals—Abstract**—The refusal of instructions will not be considered where those given are not set out in the abstract. —(377)

7. **Harmless Error**—Technical errors will not reverse a judgment manifestly correct upon view of all the evidence.—(379)

8. **Pleading—Evidence—Municipal Ordinance**—In an action against a street railway company for negligence in the operation of its cars resulting in the death of a traveler, an ordinance of the municipality is admissible though not pleaded.—(379)

*Appeal from Denver District Court* — Hon. PETER L. PALMER, Judge.

Mr. CHARLES J. HUGHES, Jr., Mr. GERALD HUGHES, Mr. H. S. ROBERTSON, and Mr. ALBERT SMITH, for appellant.

Messrs. TALBOT, DENISON & WADLEY, for appellee.

Mr. JUSTICE WHITE delivered the opinion of the court:

Appellee, as plaintiff below, instituted this action against appellant, as defendant below, to recover

damages alleged to have been sustained by reason
of the death of her husband, William G. H. Wright,
through the negligence of the defendant.

The complaint as it stood after a motion to
strike certain portions thereof had been ruled upon,
in substance charged that defendant, a Colorado cor-
poration, operated a street railroad on Broadway in
the city of Denver, whereon there were double tracks
—one on the east and the other on the west side of
said street, with a space of about eight feet between
the two—and was using cars thereon propelled by
means of electricity; that said Wright was riding his
bicycle and came upon Broadway, from the west, on
West Sixth avenue, turned north towards East
Seventh avenue, and traveled along a certain pathway
or portion of said street, customarily, and with full
knowledge of defendant, used by wheelmen for such
purpose; that said bicycle path lay about two feet
west of and parallel to the east track of defendant;
that while the said Wright was then and there in the
exercise of due and proper care, and without negli-
gence on his part, a train of defendant's electric cars
traveling behind him, and in the same direction on
said east track, was carelessly and negligently oper-
ated by defendant's servants; that it was propelled
on said street in a northerly direction "at a greater
rate of speed than 12 miles an hour, to wit at the rate
of 25 miles an hour"; that the servants of defendant
in charge of said train by keeping a vigilant watch
could have seen said Wright, and that he was in
danger of being run against and injured by said
train, and could have averted said injuries by slow-
ing up or stopping said train, but wantonly, negli-
gently, and recklessly, failed to so do; that the said
deceased did not know of the proximity of said train
to him, and was unaware of its approach; that the
failure of defendant to ring or sound its bell or gong

at said Sixth avenue street crossing, or after it passed over the same, was in violation of a duty imposed by city ordinance; that by reason of the negligence of the defendant the said train of cars overtook, ran down and killed the said Wright; that by an ordinance of the city of Denver, the speed limit for cars on said street was not to exceed twelve miles per hour, and that in exceeding such speed defendant company was acting in violation of said ordinance.

The answer admitted the corporate existence of defendant and the operation of its railroad on Broadway and over the tracks situate as above; denied all other allegations in the complaint, and alleged contributory negligence on the part of deceased. The new matter in the answer was denied by the replication.

At the close of plaintiff's evidence, defendant moved for a directed verdict in its favor, on the grounds that plaintiff had failed to show any negligence on the part of the defendant which could be held to be the approximate cause of the accident; that the evidence showed deceased guilty of contributory negligence in riding between the tracks, and that deceased was never, up to the time of the accident, in a dangerous position. This motion was overruled, and likewise one for nonsuit, based upon the same grounds. After all the evidence was in, the motion for directed verdict was renewed but denied. Objections were made by the defendant to the giving and the refusal to give certain instructions, and to the introduction in evidence of the speed limit ordinance. A verdict was returned in favor of the plaintiff. Thereupon, motion for new trial was filed but subsequently withdrawn, and a motion interposed by defendant for judgment *non-obstante veredicto*. This was denied and judgment given upon the verdict, from which this appeal is prosecuted.

(24)

A motion for judgment *non-obstante veredicto* cannot be interposed by a defendant in a law case. It was, therefore, not error to overrule it.—*Quimby v. Boyd,* 8 Colo. 194; *Hall v. Linn,* 8 Colo. 264; *Floyd v. C. F. & I. Co.,* 10 Col. App. 54, 56, 57.

The motions for directed verdicts and for non-suit were also properly denied. What constitutes negligence and reasonable care is a question for the court, but whether the facts relied upon to show either have been proved is for the jury. In the determination of such matters all disputed facts are to be decided in favor of the plaintiff, and all presumptions and inferences favorable to him, which the evidence warrants, must be accepted as true.— *Nichols v. Chicago B. & Q. R. Co.,* 44 Colo. 501, 98 Pac. 809.

Therefore, when the facts, or the inferences to be drawn therefrom, are in any substantial degree doubtful, or fairminded men might reach different conclusions from the facts, the only proper rule is to submit the question to the jury for determination. It is only where the facts are undisputed, and but one inference can be drawn from them, that it becomes the duty of the court to determine as a matter of law whether there was such lack of negligence or the presence of such contributory negligence as to preclude a recovery.—*Behrens v. K. P. Ry. Co.,* 5 Colo. 400; *Denver S. P. & P. R. Co. v. Wilson,* 12 Colo. 20, 27; *Lord v. Pueblo S. & R. Co.,* 12 Colo. 390; *Guldager v. Rockwell,* 14 Colo. 459; *Horn v. Reitler,* 15 Colo. 316; *Union C. & C. Co. v. Sundberg,* 36 Colo. 8.

We are clearly of the opinion that there was ample evidence in this case to warrant its submission to a jury under proper instructions. The evidence in behalf of plaintiff, considered in its most favorable light, proved her case; or, at least, sufficiently estab-

lished it to support a verdict in her favor.—*Moffatt v. Tenney,* 17 Colo. 189.

From the testimony of witness Lott, it appears that he was riding beside deceased, from Sixth avenue, where he had overtaken him; saw a car on west tracks coming south towards them; witness was riding near the south bound track, deceased near the north bound track between the double tracks. Witness, who had come from further south on Broadway, knew that car was coming from the south, but didn't think that deceased did; dropped behind deceased, so that car going south could pass; Wright was riding from six to eighteen inches west of the inside rail of the north bound track; witness did not hear any bell sounded, or any warning from the car at that time, though had heard whistle or gong further back; after striking Wright the car ran half a block—200 feet—before it stopped.

Witness Collins testified in substance: Was riding on bicycle about two hundred feet behind Wright; saw him for a distance of two hundred and forty feet; he rode from a foot to a foot and a half from the left rail of the north bound track; was watching him; did not deflect himself nor make turn in front of the car.

Witness Dillon testified in substance: Saw Wright come on to Broadway from Sixth avenue; the car that killed him was twenty-five or thirty yards in his rear; this car was coming behind him and there was another car going south on the other track; deceased "layed over" to the north bound track, for the car that was coming meeting him on the south bound track to pass, and came down the track until the car hit him; nothing between Wright and the car to obstruct the motorman's view; the car was going eighteen or twenty miles an hour; the car

went from one hundred and twenty to one hundred and twenty-five feet after it struck the man.

Witness Swingle testified in substance: Had crossed Cherry creek bridge going south; saw deceased and two other men riding bicycles north between double tracks; a car was coming on the east tracks going north; another car on the west line was going south; the other two bicyclists turned out of the way of the car; Wright rode some distance after they turned out, and seemed to be "laying over" for the car that was coming from town going south; this car was about two hundred or three hundred feet back north; car going north was traveling not less than eighteen miles an hour; nothing to obstruct the motorman's view, could have seen Mr. Wright if he had been looking; Wright rode between the tracks and was overtaken by the car that was going north, struck and run over; car traveled after it struck him, before it stopped, at least one hundred and twenty-five feet. Other evidence gave speed of car at from fifteen to twenty miles an hour.

The defendant's testimony was to the effect that deceased appeared to be out of the reach of the car, but just as the car got opposite to him he turned abruptly in front of it and was picked up with the fender; that he was about four or five feet in front of the car when the turn was made; that car was gonged, and blew whistle, as it came to Sixth avenue, and just before Wright was struck whistle blown again; speed of car was between ten and twelve miles an hour; after deceased turned in on track, car could not help hitting him, even if speed had been five or six miles an hour; car coming in opposite direction; was no obstruction between the two; nothing to have prevented Wright from turning to left, or even crossing west track entirely; customary for wheelmen to ride between double tracks; hundreds of them every

day; their general custom on the approach of a car is to "lay over" to the other side.

Under the evidence we are of the opinion that the jury might properly have found that the deceased was not guilty of such contributory negligence as to preclude a recovery herein. The jury could, under the facts of this case, believe that his negligence was not the proximate cause of his death. Whatever the law may be elsewhere—and it is unnecessary to review the many cases cited from other states—in this jurisdiction it is well established that a plaintiff may recover for personal injuries, notwithstanding his own negligence exposed him to injury, if the defendant, after becoming aware of his peril, or after he could have become cognizant of it, by the exercise of proper watchfulness and precaution, failed in that respect, and such failure was the proximate cause of the injury.—*Denver & B. P. R. T. Co. v. Dwyer,* 20 Colo. 132, 137, 138; *Hector Min. Co. v. Robertson,* 22 Colo. 491, 494; *Posten v. Denver Tram. Co.,* 11 Col. App. 187, 192.

In *Nichols v. Chicago B. & Q. R. Co., supra,* the law applicable here is announced as follows:

"In *K. P. Ry. Co. v. Cranmer,* 4 Colo. 524, it was held that the plaintiff in a case for personal injuries may recover notwithstanding his own negligence exposed him to injury, if the defendant, after becoming aware of his peril, failed to use ordinary care to avoid injuring him, and such failure was the proximate cause of the injury. In *D. & R. G. Ry. Co. v. Buffehr,* 30 Colo. 27, 69 Pac. 582, this court advanced a step and held, in effect, that this rule was not limited in its application to cases where the peril of the person injured was actually discovered by those at whose hands the injury was sustained, but extended to cases where such peril could have been discovered by the exercise of reasonable

care upon their part. The principle underlying these propositions is that the party who has the last opportunity of avoiding injury must prevent it if, by the exercise of reasonable care, he can do so, and, if he does not, it is his negligence in this respect, and not that of the one first in fault, which is the proximate cause of the injury.''

In *Philbin v. D. C. Tram. Co.*, 36 Colo. 331, 336, it is said:

''If a motorman saw or by the exercise of ordinary care and diligence should have seen, a person or vehicle ahead of his car, and through the careless or negligent failure to apply such means as the exigencies of the case require to stop the car, a collision occurs, the company will be liable for the damages occasioned thereby.''

Citing in support of the proposition the following: *Davidson v. Tramway Co.*, 4 Col. App. 283; Beach on Con. Neg. 288a; Booth Street Railway Law, §§ 305, 306, 315, 316 and 317; *Lawler v. Hartford Ry. Co.*, 72 Conn. 74; *Adolph v. Central Park Ry. Co.*, 76 N. Y. 530; *Clark v. Bennett*, 123 Cal. 274; 27 Am. & Eng. Enc. of Law, 68, 70, 74, 75, 77.

And in the same case, after citing *D. & R. G. Ry. Co. v. Buffehr*, 30 Colo. 27, as announcing the rule, ''that if the defendant fails to see what he was bound to look for, and ought to have seen, he is guilty of negligence,'' says, ''We believe this rule applies with peculiar force to those in charge of street railway cars propelled by electricity along the streets of a city.'' Such streets are public thoroughfares on which all have the right to travel, but neither a wheelman, a pedestrian, a street car, a carriage, nor even an automobile, has an exclusive right to their use. Their rights and duties are relative, and all must use reasonable care not to injure each other. By reason of its character as a means of conveyance

the street car has a preferential right over the space occupied by its tracks, but such right must be exercised with due regard to the rights of others.—*Denver City Tram. Co. v. Martin,* 44 Colo. 324, 98 Pac. 836; *Philbin v. D. C. Tram. Co., supra; Davidson v. Tramway Co., supra; Cooke v. Baltimore Trac. Co.,* 80 Md. 551, 554.

It is not negligence *per se* for a pedestrian, or a traveler by the usual or ordinary means of locomotion to propel himself across or along a public street even though in so doing he crosses over or passes along between street railway tracks. The question of negligence depends upon all the facts and circumstances existing and attending the act. Certainly in such case a greater degree of watchfulness and caution is required than where streets are not so burdened. The pedestrian or traveler is bound to exercise ordinary care and such reasonable prudence and precaution as the attendant circumstances may require to avoid injury, and a like duty rests upon the street car company.—*Denver City Tram. Co. v. Martin, supra.*

In *Philbin v. D. C. Tram. Co., supra,* it is further said:

"It is the duty of the motorman to exercise ordinary care and diligence to ascertain whether the track ahead is clear and to avoid striking persons or objects upon the track, when by the exercise of ordinary care and diligence it is reasonably possible to do so, and he is bound to notice the presence of other vehicles and pedestrians ahead of his car, and should be watchful for that purpose, and if he has reason to apprehend danger, he should regulate the speed of his car, so that it might be quickly stopped should occasion require it."

With full knowledge that hundreds of wheelmen daily ride along the space between the double tracks,

that they generally "lay over" to the other side to permit approaching cars to pass, that a car was coming from the north approaching Wright at a distance of 200 or 300 feet away, that Wright had given no intimation that he was aware of the approach of the car behind him, and as the evidence shows, was "laying over" to the north bound track to let the south bound car pass, would impress any fair-minded person that such wheelman was in imminent danger, and was unaware of it. A duty therefore rested upon defendant to regulate the speed of its car so that it might have been quickly stopped when occasion required it. The sounding of the gong or the ringing of the bell, if such occurred, and as to that the evidence was conflicting, was not sufficient under the circumstances of this case.

Under these circumstances it was clearly negligence in the defendant in failing to slacken its speed, or, if need be, stopping its car, until it knew that deceased was aware of his danger, and would have ample time to protect himself therefrom. It may be true, as announced by some courts, that a motorman has the right to assume that a wheelman, upon the sounding of a gong, would timely leave his position of danger, but certainly such presumption will not maintain where there is present in the mind of the motorman, or should be, the facts given above. The presumption that naturally arises under these circumstances, and which should have arisen in the motorman's mind, is that the wheelman was unconscious of the approach of the north bound car. Upon this question of the duty of the defendant, it is proper to say that while perhaps a motorman may rightfully assume that a pedestrian will turn out of the way of the car, he cannot rest on such presumption so long as to reach a point where it will be impossible for him to control his car, or give warning

in time to avert injury.—*Randle v. Birmingham Ry. Light & Power Co.,* 48 So. 114; *Currie v. Consolidated Ry. Co.,* 71 Atl. 356; *Baldie v. Tacoma Ry. & Power Co.,* 100 Pac. 162; 163.

The objections to the refusal to give instructions requested can be of no avail to defendant. It has not embraced within the abstract the court's entire charge to the jury. Of the eighteen separate instructions constituting the charge, but seven are embodied in the printed abstract. Appellant must not only set forth in that document the instructions refused, but also those given in order that this court may know how the jury were advised. The instructions given may embody those refused.—*Otto v. Hill,* 11 Col. App. 431, 432; *Birmingham v. People,* 40 Colo. 362, 365.

Nor can defendant predicate error upon instruction No. 2 given, and of which complaint is made. That instruction in effect told the jury that deceased had no legal right to ride his wheel between the tracks of the defendant company, and that it was contributory negligence to so do, and the jury should find for the defendant, unless they further found that the motorman in charge of the car, by the exercise of ordinary care, could have seen the deceased and known he was in a position of peril, and failed to exercise such care and caution in stopping said car to avoid injury to deceased as a person of ordinary care and prudence would have exercised under like circumstances. This instruction, taken in connection with instruction numbers 17 and 18 of the court's charge, requested by the defendant, is certainly as favorable to the defendant, if not more so, than the record discloses it was entitled to have. Instruction No. 17 precluded the plaintiff recovering if the jury found that deceased turned suddenly in front of the car from a position where the car would safely have

passed him, and that after he·did so the motorman could not have avoided the accident by the use of ordinary care.   While instruction No. 18, after declaring as a matter of law that a person who rides between the tracks of a street railway was guilty of contributory negligence, told the jury that a motorman was under no obligation to slacken the speed of his car from the mere fact that such bicyclist was riding between the double tracks, at a safe distance from the train, but. had the right to assume that such wheelman would remain at such safe distance, and allow the train to pass, and if deceased was so riding but turned in front of the car at so short a distance that the motorman, in the exercise of ordinary and reasonable care, could not have stopped his car in time to avoid the accident, their verdict should be for the defendant.

The only vice in these instructions is the assumption that it is negligence *per se* for a person to ride between the tracks of a street railway, but of that defendant cannot complain.   It is also probably true that deceased was negligent under the conditions then existing; not that he was upon or near the company's tracks, but because he was not properly watchful and cautious.

The ordinance referred to in the pleadings and introduced in evidence, as .to defendant's duty to sound gong or ring bell is in two divisions; first, when approaching a street crossing; second, when the motoneer has reason to believe there is danger of a collision.   An instruction—number 3—based upon the second subdivision of this ordinance is complained of.   It is contended that the allegations in the complaint are, as to the first subdivision, to wit, failure to ring within sixty feet of the crossing, and that it does not plead a violation of the second subdivision requiring the motoneer to ring when he has

reason to believe there is danger of a collision. Whether or not the complaint properly pleads a violation of the second subdivision is of no importance. The ordinance is evidence—as to what is negligence—and it was no more necessary to plead it than to plead any other evidence upon which plaintiff relied for recovery.—*Denver City Tram. Co. v. Martin,* 44 Colo. 324, 98 Pac. 836, 838. However, the failure to sound a gong after passing over said crossing was pleaded. The accident occurred after that event. Therefore the ordinance was sufficiently pleaded.

It must be conceded that receiving in evidence the speed limit ordinance, and giving the instruction based thereon, over the objections made by defendant, was error. The ordinance appeared to refer to the Denver Tramway Company, its successors and assigns. No evidence was introduced connecting the defendant with that company. We are of the opinion, however, that this judgment should not be reversed because of this technical error. A motorman of defendant on cross-examination, without objection, testified that the schedule rate of speed on Broadway where the accident occurred was twelve miles per hour; also, as heretofore seen, that hundreds of bicyclists passed over the street at that point each day, and other evidence showed it to be a much traveled street. Under these undisputed facts, it was, as a matter of law, the duty of the company not to exceed that speed and the court could have properly so declared and based an instruction thereon, irrespective of the ordinance. The further objection is made that the ordinance did not apply to the place of the accident. The language of the ordinance fixed the rate of speed on that "portion of its said lines between Cherry creek and Nineteenth street in the said city of Denver" at not to exceed eight and one-half

miles per hour, and "outside of the above bounded territory" at a speed not exceeding twelve miles per hour. The accident occurred either within the territory between Cherry creek and Nineteenth street, or outside of said territory. Therefore, upon that point certainly the defendant cannot complain.

We are clearly of the opinion that no substantial rights of the defendant have been disregarded and the error committed was not prejudicial. The judgment will, therefore, be affirmed.        *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE BAILEY concur.

Announced June 7, A. D. 1909; rehearing denied March 7, A. D. 1910.