[No. 3389.]

CITY AND COUNTY OF DENVER v. MUNROE.

1. TRIAL—*Motion for Non-Suit—Waiver.* Where the defendant proceeded with the trial in a personal injury case after denial of a non-suit, it did so at the risk that any defects in the plaintiff's proof might be supplied by subsequent evidence.

2. —— *Questions for Court or Jury.* What constitutes negligence is a question for the court; whether negligence in fact is established is for the jury. Where the facts proven, or the inferences to be drawn therefrom, are in any substantial degree doubtful, or fair minded men may reach different conclusions, the question must go to the jury. Only when the facts are undis-

puted, and but one inference can be drawn therefrom, is the question for the court.

3. BILL OF EXCEPTIONS—*Requisites.* Where maps used in the examination of witnesses and necessary to a clear understanding of the testimony are not made a part of the record, the court of appeals may decline to consider testimony in the case for any purpose.

The allegation that the bill of exceptions contains all the evidence will not be allowed effect where the bill itself discloses the contrary.

4. INSTRUCTIONS—*Given in Other Form,* are properly refused.

5. —— *As to Interest of Party Testifying.* A requested instruction, which singled out a party to the suit from the other witnesses by stating that she was permitted by statute to testify in her own behalf, but that in considering her evidence the jury should bear in mind her interest in the result, was properly refused.

6. CONTRIBUTORY NEGLIGENCE—*Of Pedestrian in the Night Time.* A pedestrian traversing the streets in the night is not under duty to assure herself. of the safety of the place where she walks. She is only required to exercise reasonable care, in the light of what information she has at the time.

7. NEW TRIAL—*Weight of Evidence—Province of the Court.* A new trial is not to be awarded merely because in the view of the court the testimony would justify a different verdict, but only in case of palpable wrong.

8. APPEAL AND ERROR. A verdict ·which has been approved by the trial court will be set aside on review only in case of palpable wrong.

*Appeal from Denver District Court.* HON. HARRY C. RIDDLE, Judge.

Mr. H. A. LINDSLEY, Mr. F. W. SANBORN, Mr. MILTON SMITH, and Mr. CHAS. R. BROCK, for appellant.

Mr. F. T. JOHNSON, for appellee.

Presiding Judge SCOTT delivered the opinion of the court.

This is an appeal from the judgment of the district court rendered against the appellant and in

favor of the appellee on account of personal injuries alleged to have been received by the latter from falling into an excavation for a storm sewer then being constructed. It appears that at the time of the accident appellant, through its contractor, the Commonwealth Construction Company, was engaged in the construction of a storm sewer along West Thirty-third avenue, and near the center of said street in the City and County of Denver. This excavation was about seven feet in depth and from two and one-half to three feet in width. The accident occurred on the line of the west sidewalk on Alcott street in said city, where said street intersects the said West Thirty-third avenue. It is alleged in the complaint:

"That on or about September 25th, 1907, the defendant caused a hole or trench about two feet wide and seven feet deep to be dug along and in said West Thirty-third avenue and across said Alcott street, and piled up in said street at said crossing large amounts of dirt. And negligently caused the cross-walk on the easterly side of said Alcott street, where the same crosses said West Thirty-third avenue, to be cut through and removed from over and above said hole and trench, so that on said date above mentioned, there was and remained a hole or pitfall at or near, the point where the sidewalk on the easterly side of said Alcott street, crosses said West Thirty-third avenue, by means of said cross-walk. And on the date above mentioned, the defendant, negligently and carelessly, failed and neglected, to enclose said hole or pitfall with any fence, or guard of any kind whatsoever, and negligently and carelessly failed and neglected to put up

or provide any warning or signal at or near said hole or pitfall, and negligently and carelessly, failed and neglected to put and maintain at or near said hole or pitfall, any red light or lights, or other warning or signal; and by reason of said negligence and carelessness of defendant as aforesaid, said street, sidewalk and crossing, became and was an exceedingly dangerous place for persons ordinarily passing along and over said street, sidewalk and crossing; and the said defendant negligently and carelessly allowed said street, sidewalk and crossing, to remain and continue in said dangerous condition during all the times herein mentioned.

That on said day and date, at or about the hour of seven o'clock in the evening, while said street, sidewalk and crossing remained and was in said dangerous condition for ordinary travel as aforesaid, the plaintiff, while passing and walking along said Alcott street, and across said West Thirty-third avenue at the usual crossing place thereon for pedestrians, not knowing or having any means of knowing of said dangerous condition of said street, sidewalk and crossing, and while in the exercise of due care, fell into said trench or pitfall."

That by reason of such negligence the plaintiff suffered the injuries complained of.

Negligence upon the part of the defendant is denied and contributory negligence pleaded. The errors complained of are:

1. The refusal of the court to grant defendant's motion for non-suit;

2. The denial of defendant's motion for a directed verdict.

3. The refusal of the court to give certain instructions requested by appellant.

It will be sufficient to consider the latter of the first two assignments only, and upon all the evidence in the case, for after the court had overruled the defendant's motion for non-suit, it proceeded with the trial and therefore at the risk that the defects in the plaintiff's proof, if any, be afterwards supplied either by evidence on the part of the defendant, or that permitted on the part of the plaintiff.—*Horn v. Reitler,* 15 Colo. 316.

A consideration of the record shows that upon the trial two maps, one offered upon the part of the plaintiff, and one by the defendant, were used and very generally so, in the examination of many of the witnesses both as to questions and answers, and that such testimony is so related to such maps as to make impossible a very clear understanding of the testimony, and perhaps to exclude much of its meaning, without reference to such maps. These maps are omitted from the bill of exceptions and are not made a part of the record in the case. For such reason, the record is so incomplete as to justify the court in declining to consider the testimony in the case for any purpose.

"Where much of the evidence in the bill of exceptions contains references to a map used on the examination of witnesses to illustrate and make plain their evidence, and to locate objects, etc., and the map is not contained in the bill of exceptions, the bill of exceptions shows affirmatively that it does not contain all the evidence, notwithstanding the recital that it does." *Coal Co. v. Cuthbertson* (Ind.) 67 N. E. Rep. 558.

This doctrine seems to be approved in the case of *O'Haire v. Burns,* 26 Colo. 190.

But we have carefully read all the evidence in so far as it appears in the transcript, and from this we think it fairly appears that at the time of the accident, the Commonwealth Construction Company, acting for the city, was engaged in the construction of the storm sewer referred to, along West Thirty-third avenue, of the width and depth substantially as stated in the complaint. The work was proceeding in an easterly direction. Earlier, on the day of the accident, the plaintiff had crossed the excavation along the west side of Alcott street. At the time, and before disturbed by the workmen, there had been a board walk on each side of Alcott street extending a part, if not all the way across Thirty-third avenue. The plaintiff, in the afternoon and at about four o'clock, returning to her home from the city, had crossed Thirty-third avenue on the west side of Alcott street, and at that time saw that the sewer had been tunneled under the board walk on that side of the street, at least this walk had not been disturbed and she walked over the trench on the walk. She assumed that the walk on the east side of the street had been left in place as it had been on the west side, and over which she had passed in the afternoon.

The plaintiff testified that about seven o'clock in the evening when she approached the sewer, being then on the east side of the street, it was very dark; that she was proceeding carefully and that there was no bar to her approach, and no red light or lights near, to indicate danger; that there was a shadow at the time, which looked to her like the

walk and which she believed was the walk. It appears that on both sides of this walk, dirt had been thrown out of the trench upon the street making an embankment of somewhat irregular height, ranging from three to four feet. The plaintiff is corroborated in all of these particulars as to the conditions by the witness Hayes who says that while he was in the act of stepping upon what he believed to be the walk at this particular point, he discovered it to be a shadow, in time to save himself by jumping across the opening; that after he crossed the trench he turned around and upon looking into the excavation he found the plaintiff with whom he was not acquainted, lying in the bottom of the trench apparently unconscious, but that upon calling to her the second time, she spoke and he lifted her out, and afterwards assisted her to her home. He also, as does the plaintiff, testifies that the arc .light located at that corner, was not burning. He further says that the excavation was not there in the morning of that day when he passed over the walk. He says that he saw two red lights, one behind a tile near the pile of dirt and about the center of Alcott street, and one about one hundred feet further along Thirty-third avenue; that when he examined the place next morning he found the planks of the walk had been chopped off about even with the sides of the trench. This testimony as to conditions, is quite fully corroborated by the witnesses William Pique and W. E. Pique, his son, who seem to have passed along this place very soon after the plaintiff was taken from the ditch.

Other witnesses testified substantially to the same state of facts as existing a few minutes after

the accident. There is testimony conflicting with this, by witnesses offered upon the part of the defendant below. Principally by workmen of the construction company who say that a tripod or small derrick, was placed across the walk at the particular point where the plaintiff fell at the time they quit work about 4:30 o'clock in the afternoon, and also by the watchman of the construction company, who says that he placed a red light at the crossing, on the line of the board walk, and other red lights along the line of the trench, at about six o'clock in the evening. He is corroborated in this by witness Stapleton who says that while on his porch he saw this man place the lights substantially as testified to by him, but that he then went into the house and did not come out again for about an hour after, when he saw a crowd at the place of the accident. The son of the plaintiff and a witness named Ruth Whittle testified that they went to the place of the accident shortly thereafter to look for plaintiff's comb and while there they secured a red light from near the center of Alcott street and one from some distance on Thirty-third avenue and placed one of these on each side of the trench along the line of the sidewalk to prevent further accident.

This testimony, if true, may account for some other testimony as to the location of the lights. Other witnesses give testimony as to the arc light, some say it was burning dimly and others that it was flickering. If we are correct in the assumption above, as to the substance of the testimony in this case, it is quite clear that there was such a dispute as to facts concerning the conditions involved, that

the court was fully justified in submitting the case to the jury for determination.

Judge Walling, in the case of *Lauter v. Colorado & Southern Ry. Co.,* decided in this term of court, said:

"The appellate courts of this state have been frequently called upon to define the basic principles by which trial courts are to be guided in the determination of motions of this character under varying conditions of fact. Thus, in *Nichols v. R. R. Co.,* 44 Colo. 501, 508, the supreme court, by Mr. Justice Gabbert, said:

"Cases frequently arise wherein it becomes the duty of the trial court to determine the question of the negligence of the plaintiff as a matter of law, but those are cases where the testimony will allow no other inference; and hence, it follows that where the question of negligence depends on a state of facts from which different minds may honestly draw different conclusions on that issue, the question must be submitted to the jury for determination.—*Colo. Central R. R. Co. v. Martin,* 7 Colo. 592; *Lord v. Pueblo S. & R. Co.,* 12 Colo. 390; *Solly v. Clayton,* Ibid. 30; *D. & R. G. Ry. Co. v. Spencer,* 27 Colo. 313."

In *Tramway Co. v. Wright,* 47 Colo. 366, the court used this language:

What constitutes negligence and reasonable care is a question for the court, and whether the facts relied upon to show whether either has been proved is for the jury. In the determination of such matters all disputed facts are to be decided in favor of the plaintiff, and all presumptions and inferences favorable to him, which the evidence warrants, must

be accepted as true. *Nichols v. Chicago, etc., Co.,* 44 Colo. 501. Therefore, when the facts, or the inferences to be drawn therefrom are in any substantial degree doubtful, or fair minded men might reach different conclusions from the facts, the only proper rule is to submit the question to the jury for determination. It is only where the facts are undisputed, and but one inference can be drawn from them, that it becomes the duty of the court to determine, as a matter of law, whether there was such lack of negligence or the presence of such contributory negligence as to preclude any recovery. *Behrens v. K. P. Ry. Co.,* 5 Colo. 400; *Denver S. P. & P. R. Co. v. Wilson,* 12 Colo. 20, 27; *Lord v. Pueblo S. & R. Co.,* 12 Colo. 390; *Guldager v. Rockwell,* 14 Colo. 459; *Horn v. Reitler,* 15 Colo. 316; *Union C. & O. Co. v. Sundberg,* 36 Colo. 8."

Measured by the rule as thus stated and upon the state of facts as thus gathered from the record, we are convinced that the court did not err in refusing to direct a verdict for the defendant. The duty of the plaintiff, as well as the defendant, in this case appears to have been fully covered by the instructions given upon the trial and the disputed questions of fact to be determined thereunder, brings this case, in our judgment, within the rule heretofore announced. It may not be out of place to say that all such instructions given, were at the request of defendant and are as favorable to the defendant as can reasonably be asked. The error alleged as to certain instructions requested by the defendant and refused by the court, is not well taken for the reason that it very clearly appears that the substance of all these, in so far as they appear to have

been applicable to the case, were fully covered by the court in other instructions, save and except the one hereinafter discussed.

It is contended that the court should have given the following instruction requested by the defendant and which was refused:

"You are instructed that in Colorado the plaintiff is by statute permitted to testify in her own behalf, but that in considering such evidence you are to bear in mind the fact that she is directly interested in the result of the action."

We do not think this error and believe the practice wherein either party to the suit is thus singled out from other witnesses, is one not to be commended.

The usual instruction upon this subject was given, as applied to all witnesses, and was sufficient.

Mr. Justice White in the case of *Tramway Co. v. Cowan,* 116 Pac. 136, enters into a somewhat full discussion of this subject and says, among other things:

"The practice of singling out witnesses in an instruction where the credibility of others testifying in the case may also be affected by their interest, has frequently been criticised by the courts. In *Phoenix Insurance Co. v. La Pointe,* 118 Ill. 384, 389, 8 N. E. 353, 354, the requested instruction, "that the plaintiff, La Pointe, and the mortgagee, Hartman, are both interested in the event of the suit, and that, while said interest does not render them incompetent as witnesses, it goes to their credibility as such," was refused, and error assigned thereon. In overruling the assignment, it is said: "The instruction under consideration, if given, would give

undue prominence to facts alleged as operating to discredit appellee's witnesses, while it ignored corresponding causes alleged to affect the credibility of witnesses for appellant.''

Counsel for plaintiff in error complain that the verdict of the jury is contrary to the weight of the evidence, and in violation of instruction number ten. This instruction is as follows:

''The court instructs the jury that the plaintiff confesses that she knew the excavation had been made along West Thirty-third avenue and across Alcott street, and having this knowledge, it became her duty before attempting to cross the excavation, to assure herself that it was safe to do so, and to make such investigation and examination as was necessary for this purpose; and if from the evidence you find that she failed so to assure herself by making an investigation or examination of the conditions, she was guilty of contributory negligence, and in that event your verdict must be for the defendant.''

This was but one of the instructions of the court. There were many others, and the jury were properly instructed that no one instruction contained all of the law of the case, and that they were to be considered together and as a whole.

In the first place it would seem that if there was error in any matter relating to this instruction, it was upon the part of the court in giving it to the jury as an instruction.

The instruction does not fairly state the law. The exercise of reasonable and ordinary care upon the part of the plaintiff in the light of whatever knowledge or information she may have had at the

time, is all that the law required. She was not bound to make sure. Such a rule would relieve the city from any duty to the traveling public whatsoever.

Speaking of the assignment of error now being discussed counsel say:

"The last assignment of error is based upon the fact that the verdict is clearly and palpably against the weight of the evidence, and appears to have been rendered by the jury under the influence of passion and prejudice." .

There is nothing in the record either as to the amount which the jury found the plaintiff to be entitled to, or in any other respect upon which the court may justly say that the verdict was rendered by the jury under the influence of passion or prejudice. Neither do we find any justification for the contention that the verdict is clearly and palpably against the weight of the evidence.

The argument of counsel upon this question seems to assume that an appellate court is at liberty to set aside the verdict of the jury upon the ground that it is not sustained by the weight of the evidence, whenever the judges of the court may seem to feel that in their view, the testimony would justify a finding contrary to that of the jury.

Counsel seem to forget that the jury is a constitutionally recognized body, with powers none the less positive in character because they are limited in scope. The jury is as much an integral part of our system of jurisprudence as are the courts. It has its separate province, duties and prerogatives. These have been well defined and well understood since the adoption of the jury system first in England. For courts to trespass upon, assume or usurp

the prerogatives of the jury, is to that extent, to invade the constitutional guarantee of the right of trial by jury.   When courts have assumed for any reason to set aside verdicts of juries, it is generally upon the theory that the matters involved are to be again submitted to other juries.  Without doubt, very many mistakes and errors of judgment, have occurred upon the part of juries.   But courts are not guiltless in this respect.  Perhaps counsel in this case sitting as jurors, may well have reached a different conclusion, but that would have been in the exercise of their judgment as jurors.   But courts may not lightly set aside the united judgment of men constituting a jury, and are justified in doing so, only in case of palpable wrong.

Beside the trial judge, as in this case, is assumed to have heard the testimony and to have observed the demeanor of the witnesses.   Evidently here, he did not regard the finding as being so in conflict with his instructions as to justify the invalidation of the verdict.   Respect at least is due to his judgment in that particular.

*Judgment affirmed.*

All the judges concurring.